In the Matter of the Marriage of

George Johannes BORS,
*Appellant,*
*and*

Claudia Jane BORS,
*Respondent.*

(9006-65125; CA A70688)

839 P2d 272

Joseph D. McDonald, Portland, argued the cause for appellant. With him on the brief was Palmer, Feltz, Smith & McDonald, Portland.

Eve L. Miller, Portland, argued the cause for respondent. With her on the brief was Hoevet, Snyder & Miller, P.C., Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Husband appeals a dissolution judgment. He assigns error to the property division and the spousal support award. We review *de novo*, ORS 19.125(3), and address only the valuation of husband's interest in a closely held corporation. We affirm.

Husband and his brother are the sole and equal shareholders of Mt. Hood Metals, Inc. (Mt. Hood), a closely held corporation that buys, sorts and sells scrap metal. They are also partners in Bors Brothers, which owns a rental house and the 84 acre site on which Mt. Hood operates.[1] The site has significant potential environmental problems. It was formerly owned by Union Carbide Corporation, which used it as a sludge pond. Core samples have revealed a number of contaminants. No one knows if Mt. Hood or the partnership will be required to contain or remove the contaminants, but the court found that, more likely than not, Union Carbide would bear most of the expense. However, it also found that Mt. Hood or the partnership would incur legal costs to ensure that result.[2]

Mt. Hood will likely also be required to spend roughly $350,000 to comply with the federal Clean Water Act, 33 USC §§ 1251-1376, to contain and treat rainwater on the site before it washes contaminants into groundwater or the Willamette River. No third party will bear that expense. However, the court viewed the expenditure as a capital investment that would enhance the value of Mt. Hood in the same way that a significant equipment purchase would.

The court deemed Mt. Hood a going concern and used the capitalized earnings method to value it. The court applied a 30 percent discount to husband's one-half share: 10 percent for impaired borrowing power because of the spectre of an environmental clean-up, 10 percent for a salary adjustment[3] and 10 percent for the ease with which a competitor

---

[1] Both properties are unencumbered. Mt. Hood rents the site from the partnership for $4000 a month.

[2] The book value of the partnership was $504,000. The court subtracted $60,000 for anticipated litigation and clean-up costs and valued husband's interest at $222,000.

[3] The court discounted Mt. Hood's business income to accommodate the extent to which the brothers took salaries that were below market value.

could replicate the business. It concluded that husband's share in Mt. Hood was worth $550,000.

■ ■ Husband asserts that the court used the wrong method to value Mt. Hood. He argues that capitalized earnings should be averaged with the corporation's book value, in part because it costs little to enter the scrap metal business and, therefore, Mt. Hood could easily lose its earnings to a competitor. He also argues that, if he and his brother had made Mt. Hood rather than the partnership the owner of the site, the capitalized earnings method would not take into account the site's value. The low business entry barrier that husband urges is accommodated by the court's 10 percent discount for replication. We need not speculate on how the method of valuation would change if the site were an asset of Mt. Hood. It is not an asset of Mt. Hood, primarily because husband and his brother made the partnership its owner for tax reasons. Moreover, book value is an appropriate technique to value a corporation that has just been formed or is contemplated for sale. *Olinger and Olinger*, 75 Or App 351, 356, 707 P2d 64, *rev den* 300 Or 367 (1985). Here, in contrast, husband and his brother do not intend to sell Mt. Hood. *See Barlow and Barlow*, 111 Or App 179, 182, 826 P2d 18, *rev den* 313 Or 299 (1992). Mt. Hood's value to the parties is greatest as an operating entity, *see Haguewood and Haguewood*, 292 Or 197, 207, 638 P2d 1135 (1981), and the court did not err in valuing it as a going business.

■ Husband also argues that the value of Mt. Hood is lower than the court found, because it applied a flawed tax adjustment. The parties' experts examined Mt. Hood's yearly pre-tax earnings over approximately four years and applied a capitalization rate or price-earnings ratio used to value similar corporations based on after-tax earnings. Those earnings were not available for Mt. Hood, because the business was a partnership until October, 1990, and was not subject to corporate income tax. Wife's expert adjusted for the difference by calculating the personal income tax that husband and wife would have paid on the business's earnings. Husband's expert adjusted by calculating what the business would have paid had it been a subchapter "C" corporation. However, Mt. Hood is a subchapter "S" corporation. The income of such a corporation is generally taxed to the shareholders in the same

manner as partnership income is taxed to partners. IRC § 1363(b) (1992). Under these facts, there was no error.

Affirmed. Costs to wife.