Argued and submitted November 10, 1994, remanded for entry of amended judgment on appeal and cross-appeal; supplemental judgment reversed on cross-appeal May 17, 1995

In the Matter of the Marriage of

Penelope H. COOKSON,
*Appellant - Cross-Respondent,*

*and*

Peter J. COOKSON,
*Respondent - Cross-Appellant.*

(92-0811; CA A81976)

895 P2d 345

Gregory C. Hansen argued the cause for appellant - cross-respondent. With him on the briefs was William C. Crothers, Jr.

Steven C. North argued the cause for respondent - cross-appellant. On the brief were John L. Hemann and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

Wife appeals from a dissolution judgment. She seeks an award of spousal support as well as modification of both the property distribution and the child support award. Husband cross-appeals and also seeks modification of the property distribution and the child support award. In addition, he appeals from the supplemental judgment for attorney fees and costs. We review *de novo*, ORS 19.125, and remand for entry of an amended judgment.

At the time of trial, wife was 42 years old and husband was 49. The parties had been married for 16 years and had two children, ages 15 and 13. Husband is a physician and owns part of a weight loss business. Through his employment, he earns more than $10,000 per month. Wife is a high school graduate who, at the time of the marriage, was working in a large department store's management training program. She quit her job when their first child was born in 1978. During the course of the marriage, she contributed significantly to husband's practice; she managed the clinic's affairs and kept the books for some time. More significantly, when husband was in an alcohol rehabilitation program for eight months in 1990 and 1991, she was solely responsible for keeping the practice open. During her husband's absence, she hired doctors and took on more of the responsibilities of managing the affairs of the practice. Husband acknowledged that he would not have had a practice to return to but for wife's efforts. She currently earns $800 to $900 per month from Cookwell, Inc., a small retail cookware store and coffee shop. The parties own Cookwell in partnership with another couple. They bought the business to provide the wives an opportunity to work and earn money. Both wife and her partner also work two or three days a week at Cookwell.

The parties accumulated significant assets during their marriage. Those assets include husband's practice, worth $135,620;[1] husband's pension, which the court valued at $500,000;[2] an old clinic building, currently leased to Lincoln County, worth $304,966; and the one-half interest in Cookwell, Inc., which the court valued at $75,000.

---

[1] Most of the assets were evaluated by both husband's and wife's experts. Where they were able to agree on a value for an asset, we have used that value. Where the experts have disagreed, we note the disagreement in this opinion.

[2] As explained later in the opinion, the court discounted the value of the pension

The court did not award spousal support. The parties stipulated that wife would have custody of the two minor children. Husband requested no visitation and the court concluded that husband should be denied visitation "unless and until the children request visitation." The court awarded wife child support in the amount of $1,010 based on its findings that wife's monthly gross income was $4,333 and husband's was $10,250. The court made an equal distribution of the parties' marital assets and liabilities. It awarded husband the pension plan, medical practice and various other assets and liabilities for a total property award of $611,012. The court awarded wife the one-half interest in Cookwell, Inc., the old clinic building and various other properties and liabilities for a total net value of $524,996. The court also awarded wife an equalizing judgment of $43,008. Three months later, the court awarded wife a $50,000 supplemental judgment against husband for her attorney fees.

Wife first assigns error to the court's failure to award any spousal support. Under ORS 107.105(1)(d), the court is authorized to award spousal support to one party in "such amount of money for such period of time as it may be just and equitable for the other party to contribute." One objective of spousal support is to allow each party to achieve an economic standard of living not overly disproportionate to that enjoyed during marriage to the extent that is practicable. *Christensen and Christensen*, 123 Or App 412, 415-16, 859 P2d 1192 (1993).

Wife testified that she is unable to work and there is evidence in the record, including testimony from wife's therapist, that corroborates her testimony. However, that evidence is contradicted by the evidence of wife's efforts during husband's stay in the alcohol rehabilitation program, as well as her own testimony regarding her ability to work.[3] In addition,

---

by 20 percent to account for taxes that would be assessed when the assets were later distributed. *See Alexander and Alexander*, 87 Or App 259, 742 P2d 63 (1987) (allowing the application of a discount for future taxes).

[3] When asked if she worked 40 - 50 hours per week during husband's alcohol treatment program, wife testified:

"Of course, I was trying to keep my husband's practice open so he had something to come back to. I'd work 80 hours a week to do that."

she works at least a few days every week at Cookwell. Nonetheless, even if wife is able to work full time, she will "never substantially recover from the loss of economic position due to [her] extended absence [from the job market]" and husband has "achieved a substantially advantageous economic position through the joint efforts of the parties." ORS 107.105(1)(d)(F). Wife is entitled to spousal support so as to enjoy a standard of living not overly disproportionate to the one she enjoyed during the marriage. *Goff and Goff*, 109 Or App 447, 450, 820 P2d 33 (1991).

The court apparently thought that wife is entitled to spousal support, but did not award any. The court concluded that "spousal support would ordinarily be considered on a permanent basis but for the income which will be provided the petitioner upon property division." The court was referring to income produced from the lease of the medical clinic building, which the court considered as income to wife. Nonetheless, the length of the marriage and the standard of living established during the marriage, coupled with wife's contributions to husband's practice and her absence from the job market, persuade us that an award of spousal support is appropriate. In the light of these factors, we award wife indefinite spousal support in the amount of $1,000 per month.

■ Wife next assigns error to the trial court's refusal to allow her to testify regarding husband's abuse of her and the children. She wanted to use that evidence to support her claim for spousal support and to rebut the presumed correctness of the child support award derived from the guidelines. OAR 137-50-330. Such evidence is barred by ORS 107.036(2), which provides:

> "The court shall not receive evidence of specific acts of misconduct, excepting where child custody is an issue and such evidence is relevant to that issue, or excepting at a hearing when the court finds such evidence necessary to prove irreconcilable differences."

Wife attempts to put child custody at issue by arguing that, even though husband currently does not request visitation, the court should preemptively restrict his access to the children. We decline to address that issue. If husband ever requests visitation, the court may consider appropriate

restrictions, if necessary. In any event, in the case before us, child custody was not in issue and the court properly excluded any evidence of husband's alleged misconduct.[4]

■     Wife next assigns error to the property distribution made by the court. Specifically, she argues that the court incorrectly valued her one-half interest in Cookwell, Inc. Both parties' experts used the capitalization of earnings method to calculate the value of the business,[5] which we have held is one of several appropriate methods for valuing a business. *Bors and Bors*, 115 Or App 572, 575, 839 P2d 272 (1992). This approach estimates a business's value by dividing the income stream of a business by its capitalization rate.[6] Husband's expert valued the one-half interest in Cookwell at $100,000 and wife's expert calculated the interest to be worth $21,000.[7] The court arrived at a value for a one-half interest in Cookwell, Inc., of $75,000.

On appeal, wife accepts husband's expert's calculation, except she argues that he failed to take into account a reasonable salary expense for wife and her partner. By not subtracting this expense, she argues, the expert overstated the income stream and, thus, overstated the value of the business as a whole. We agree with wife that husband's expert should have subtracted a reasonable salary expense. Husband's expert valued the entire income stream of Cookwell at $43,625. Wife asks for a total salary expense of $25,000, which we find is reasonable. Subtracting the salary expense of $25,000 gives an income stream of $18,625. Wife's expert used a capitalization rate of 21.75 percent, about which husband's expert said "I have no disagreement with that." Accordingly, we use that capitalization rate figure and arrive

---

[4] Wife was allowed to testify and introduce evidence of her and the children's continued need for therapy and counseling. We have weighed this information in our consideration of her other assignments of error regarding spousal support and child support.

[5] Wife's expert also used the book value approach and determined that a one-half interest in Cookwell would be worth $34,000.

[6] *See, e.g.*, Advising Oregon Business, Oregon Continuing Legal Education, § 46.11 (1991)

[7] The difference in values results from a number of factors including wife's expert's application of a minority discount and subtraction of a salary expense and husband's expert's readdition of accelerated depreciation expense.

at a value of $85,632 for the entire business. Wife's one-half share is worth $42,816.

■    Husband also assigns error to the court's property distribution. He argues that the court incorrectly valued the pension awarded to him by failing to discount the pension by 34 percent for future taxes. Both parties' experts testified that the actual value of the pension's assets is $631,445. Husband's expert testified that husband would inevitably incur tax liability on the assets when he receives distributions from the pension. He further testified that the tax rate is currently in a state of flux, but that the current rate is 34.5 percent,[8] which he used to arrive at a discounted value of $416,754. Wife's expert testified that the speculative nature of any future tax rate prevents anyone from accurately discounting for future taxes and, thus, no discount should be applied.[9]

The court used a discount figure of 20.5 percent and arrived at a discounted value of $500,000. The parties disagree over the propriety of the discount and, more significantly, what the discount rate should be. We faced a similar question in *Alexander and Alexander*, 87 Or App 259, 742 P2d 63 (1987). The experts' positions in *Alexander* were almost identical to the experts' positions in this case and, in that case, the trial court discounted the pension's value by 15 percent. We allowed the use of a discount rate and, because we could find no evidence to support the 15 percent discount figure, we modified the judgment to discount the husband's pension by 35 percent. A similar result is appropriate here. We can find no evidence supporting a 20.5 percent discount rate and therefore apply a discount rate of 34 percent. Husband's pension should be valued at $416,754.

Accordingly, we modify the property distribution to assign the correct values to Cookwell, Inc., and the pension. Valuing Cookwell, Inc., at $42,816 and the pension at

[8] Husband's expert testified that a 34.5 percent rate is the appropriate one. However, on appeal, husband only argues for the 34 percent rate that he used on his joint assets and liabilities worksheet that he submitted to the court.

[9] Although it can be argued that future tax rates are speculative in that they are subject to change, they are no more speculative than the capitalization rate applied to value corporations, see *infra*.

$416,754, wife received property worth $492,812 and husband received property worth $527,766. The disparity in the property entitles wife to an equalizing judgment of $17,477.

Wife next assigns error, and husband cross-assigns error to the court's calculation of child support. Both argue that the court miscalculated their own and the other spouse's income. In addition, wife assigns error to the trial court's failure to find that the presumed correct amount of child support was rebutted by the evidence of the needs of the children. However, our review of the evidence and the trial court's findings, does not persuade us that there was any error. Accordingly, we affirm the trial court in that regard. Nonetheless, we must remand the case for recalculation of child support to take into account the award of spousal support.

■     Finally, husband assigns error to the court's supplemental judgment requiring him to pay $50,000 towards wife's attorneys fees. Although our review is *de novo*, the decision of "whether to award attorney fees and costs is a matter largely in the trial court's discretion." *Reitmeier and Reitmeier*, 98 Or App 58, 60, 778 P2d 962 (1989); *Haguewood and Haguewood*, 292 Or 197, 212, 638 P2d 1135 (1981). In *Haguewood*, the Supreme Court had an opportunity to address the appropriateness of awarding attorney fees in a case involving substantial assets. There, the court said:

> "property and payments have been awarded to the parties evenly. Substantial costs of litigation for both sides have been reasonably incurred. If the husband is to pay the wife's cost of litigation, then the property division should be adjusted accordingly to reflect his assumption of her obligation. That is not necessary, however, because both parties are financially able to pay their attorneys with resources now or soon available to them * * *. In other words, both parties will have equal estates and access to resources with which to pay for the litigation. There is no reason to require either to bear the other's costs." *Id.* at 213-14.

We reach a similar result in this case. Because both parties were awarded substantial financial resources that will enable each to pay their own attorney fees, and, because there are no other circumstances in this record that would call for the

award of attorney fees,[10] it is not appropriate to order husband to pay wife's fees.

On appeal and cross-appeal, remanded for entry of amended judgment awarding wife judgment of $17,477, awarding wife spousal support of $1,000 per month commencing October 19, 1993, and for child support; on cross-appeal, supplemental judgment reversed. No costs to either party.

---

[10] In *Craig v. Craig*, 30 Or App 419, 567 P2d 141 (1977), we said:

"The reasonableness of attorney fees is a question of fact to be determined in the light of the particular circumstances of the individual case. The factors to be considered include the nature of the proceeding, the novelty and difficulty of the issues involved, the time reasonably required for research, preparation and for trial, the skill and standing of counsel, the value of the interest involved, the result obtained and the other financial demands the decrees place on the husband. *Colbath and Colbath*, 15 Or App 568, 516 P2d 763 (1973).

"* * * The amount of any contribution is intertwined in the financial considerations of the parties and is in reality in the nature of a property division." *Id*. at 423.