Argued and submitted December 15, 1995, affirmed May 29, petition for review denied July 23, 1996 (323 Or 690)

In the Matter of the Marriage of

Ronald G. ARENDS,
*Appellant,*

*and*

Karen L. ARENDS,
*Respondent.*

(9309-67518; CA A86958)

917 P2d 1060

Ira L. Gottlieb argued the cause for appellant. With him on the brief was Maria C. Sosnowski.

Catherine Carroll argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

In this appeal from a dissolution judgment, husband challenges the property and spousal support awards and the trial court's determinations of the values of business and residential property underlying those awards. We write only to address the valuation arguments related to the business and affirm.

The parties were married in 1975. There are no children from the marriage. Husband is the sole shareholder of two corporations, Northwest Financial Benefit (Benefit) and Northwest Financial Planning (Planning), which function as one entity. From 1979 to 1985, Benefit was engaged in the sale of insurance products and tax sheltered investments. The Tax Reform Act of 1986 eliminated the tax advantages of these investments, and husband changed the focus of his business. Husband now provides retirement, investment and estate planning advice and services. Business is conducted primarily through Planning, but Benefit has continued to sell insurance products on a much-reduced basis and is also used to hold the debt for both Benefit and Planning.

In addition to husband, Planning employs a part-time certified financial planner, as well as a research analyst, a client service representative and clerical staff. Husband shares fees with four additional sales representatives. Promotional literature for the business provides husband's resume, pictures of the "professional staff," and references to "money managers" and an " 'All Star' Team to Manage your Money." Planning's primary office is in Portland, with a second office in Bellevue, Washington. Husband divides his time between the two cities. Planning provides an apartment in Seattle for husband.

Planning had 91 clients in 1990, 105 in 1991, and 111 in 1993. The total funds managed had increased $10,500,000 from 1990 through 1993. At the end of 1993, the total funds managed were $22,600,000. About 25% of the investments managed by Planning are small business pension plans. Husband receives a fee of 1% to 1.6%, based on the size of the client's portfolio. Benefit continues to pay husband

a salary and has reduced the business debt of both corporations from $200,000 to about $75,000.

In 1990, husband entered into an agreement with Stephen Hood, a financial planner interested in buying an ownership interest in Planning. Hood was to buy 283 shares of Planning for $247.42 per share. The price was based on 1.5 times the gross revenue of Planning. A little more than a year later, the business relationship ended and, under the termination agreement, husband repurchased the Planning stock from Hood.

The primary focus at trial was the valuation of the corporations. Husband's expert witness, Arnold, valued them at $49,359. Wife's expert, Brams, valued the corporations at $537,000. Arnold testified that he had arrived at his valuation under the capitalization method, which he asserted was "probably the most used method of valuation of operating companies." He testified that he also applied a market value method by looking at the recent sale of another financial planning business. When the second method was applied, the value of the corporations was $23,859.

Brams testified that he had reviewed the corporations' financial statements, balance sheets, income statements, and profit and loss statements. He had also reviewed income tax returns, disclosure statements filed with the SEC pursuant to federal regulations, the Hood sale contract documents and other financial and descriptive materials. Based on his review of materials through the end of 1993, Brams concluded that, from 1990 to the end of 1993, gross revenues had increased 104.03%; funds under management had increased 88.36%; the number of clients had increased 21.98%; the managed dollars per client had increased 54.4%; and husband's salary had increased 120.94%.

The trial court valued husband's corporations at $425,000.[1] Husband was awarded all interest in the corporations, and wife was awarded the family residence and an equalizing judgment of $180,408. Wife was awarded $500 spousal support per month until husband's retirement or payment of the equalizing judgment, whichever first occurs.

---

[1] The court found the value was $500,000, subject to a $75,000 debt.

■ Husband assigns error to the trial court's valuation of the corporations. He makes various arguments as to why the court erred. Husband first contends that the court incorrectly believed that Arnold disregarded the stream of income in valuing the corporation. Husband argues that the court believed that Arnold's valuation was based only on tangible assets but that Arnold's testimony shows that the earnings were the foundation of his appraisal.

On our *de novo* review, we are not persuaded that the court erred as husband contends. Arnold adjusted the corporations' earnings by adding the operating profits to the compensation paid to the owner. He then derived a "market value salary" for the owner by considering a survey of average salaries for financial planners and data taken from the Economic Research Institute. He subtracted that "market value salary" from the earnings. The resulting "normalized income" was divided by a percentage that reflected the risk of achieving the earnings and recognized growth prospects.

Thus, in 1990, husband's salary from both corporations was $58,750, but the "market salary" subtracted was $63,492—more than husband's income. In 1991, his salary totaled $63,300 and a $66,667 "market salary" was subtracted. However, for 1992, the last year Arnold included in his valuation, the salary was $86,034 and a $70,000 "market salary" was subtracted. Arnold did not make a computation for 1993.

Subtracting a reasonable salary expense in the capitalization method was entirely appropriate. *See Cookson and Cookson*, 134 Or App 357, 362, 895 P2d 345 (1995). That does not mean, however, that the resulting valuation was the "correct" valuation for purposes of this dissolution.[2] The result of Arnold's capitalization method, as wife points out, is that most of husband's recent earnings were excluded from the calculation of the value of the business. However, both Arnold and Brams agreed that, in a small business, an individual owner would take money from the business in the

---

[2] There are many reasons for valuing businesses and, as noted in *Advising Oregon Business*, Oregon Continuing Legal Education, § 46.1 (1991):

"Appraisal of financial assets, including businesses, is an inexact science, often appearing to be as much art as science."

form of compensation. Under the facts here, that stream of income available to the owner should be recognized.[3]

We also note that the value arrived at by Brams is more in accord with valuations made by Lovett, the accountant for the corporations. At husband's direction, beginning in 1989, Lovett prepared annual letters of valuation for both corporations. Lovett used a valuation formula provided by husband of net book value plus two times gross annual revenues. The letters, addressed "To Whom It May Concern," state that each corporation has asked Lovett to compute the fair market value of the corporation. Those letters show that Benefit's value was $116,056 as of March 31, 1992, and the value of Planning was $705,919 as of December 1992. Lovett testified that he had exercised his professional judgment in drafting the letters and that the values "made sense" to him in the light of the information in the income tax returns from which he had derived the valuation figures.[4]

■      Husband next argues that the trial court erred in finding that Hood's 1990 purchase of stock, which was part of the basis on which Brams valued the corporations, was an arm's-length transaction at fair market value. Husband's argument is that Hood was "under a compulsion" to buy because he wanted to learn the fee management business and obtain ownership in such a firm. Husband contends, therefore, that the transaction was not one between a willing seller and willing buyer but, rather, one in which Hood "paid a premium to learn about the fee management business."

On our *de novo* review, we are again unpersuaded by husband's arguments. He contends that, because the sale price did not reflect the corporate debt and because the agreement was terminated after one year, the sale cannot be viewed as one that represented the fair market value of the two companies. However, the evidence shows that husband

---

[3] In fact, we do not understand husband to argue that it should not; rather his contention is that Arnold's method did recognize the stream of earnings.

[4] Husband made use of the valuation in a 1992 loan application, listing the corporations at $689,000. He testified that the value of the stock was inflated at the direction of the loan officer, but the loan officer testified that he had not directed husband to inflate the value. The statements on the application were made under oath.

and Hood agreed to the sale of a minority interest to Hood, and that, when the sale was terminated, husband repurchased the stock with a reduction in the buy-back price because Hood took clients with him. The evidence does not support husband's position that Hood was "compelled" to purchase the stock.[5]

Husband's final argument is that wife's expert did not properly value the business. He contends that Brams was an accountant, not an appraiser.[6] He argues that Brams "was not familiar with appraisal standards" and relied on "his intuition." He contends that Brams' opinion was "primarily controlled by the Hood sale" but that Brams was "ill-informed" about the transaction and made "several incorrect assumptions and errors."

Husband's arguments, and wife's responses to them, are fact-specific, pertaining to this valuation. Reciting them would be of little benefit to bench or bar. We have reviewed husband's challenges but are not persuaded that Brams' valuation rests on a faulty foundation. We agree with the trial court that the valuation of the corporations here required recognition of the stream of income available to husband. Brams' evaluation recognized that income, and we reject husband's contention that the trial court erred in accepting it.

Husband's remaining assignments of error do not require discussion.

Affirmed. Costs to wife.

---

[5] Husband also argues that the trial court erred in finding that his salary increased 120% from 1990 to 1993. Wife points out that the trial court's statement was referring only to the income from Planning.

[6] Both experts testified to their experience in valuing businesses. Their qualifications go to the weight of their testimony, and we have considered those qualifications in our assessment.