COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick,[*] Judges Baker and Annunziata
Argued at Alexandria, Virginia


THOMAS C. SHOOLTZ

v.   Record No. 2205-96-4

JANE HOFFMAN SHOOLTZ                         OPINION BY
                                        JUDGE ROSEMARIE ANNUNZIATA
 JANE HOFFMAN SHOOLTZ                        APRIL 28, 1998

v.   Record No. 2209-96-4

THOMAS C. SHOOLTZ



             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       Jack B. Stevens, Judge

          William M. Baskin, Jr. (Southy E. Walton;
          Baskin, Jackson & Hansbarger, P.C., on
          briefs) for Thomas C. Shooltz.

          David H. Fletcher (Martin A. Gannon; Gannon,
          Cottrell & Ward, P.C., on briefs) for Jane
          Hoffman Shooltz.


     Jane H. Shooltz (wife) and Thomas C. Shooltz (husband) both

appeal the equitable distribution order of the trial court.  Wife

contends the trial court erroneously valued the husband's two

businesses, erroneously reduced the monetary award based on tax

consequences to husband, and erroneously refused to reopen the

equitable distribution hearing to take further evidence on the

business valuation issue.  Husband contends the trial court

erroneously counted a single asset twice in its equitable

───────────────────
        [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

distribution award.  For the reasons which follow, we reverse.

## I.  Motion to Reopen Hearing

The parties were married in September 1976, and separated in August 1993.  Husband filed for divorce in December 1993, and wife responded with a cross-bill for divorce.  The trial court referred the matter to a commissioner in chancery, who recommended a divorce based on the separation of the parties for more than one year.

The circuit court held an equitable distribution hearing on September 15 and 17, 1994, during which evidence was taken on the value of the husband's two start-up businesses, Gateway II Limited Liability Corporation ("Gateway II") and Highland Limited Partnership ("Highland").  The trial court granted husband's motion to strike as speculative the valuation testimony of the wife's expert in which he determined the present value of the businesses' future earnings based largely, not on historical earnings, which did not exist, but on husband's income projections.

The parties submitted written memoranda on November 3, 1994.  On January 22, 1996, sixteen months after the evidentiary hearing, the trial court rendered its decision by letter opinion.  Upon husband's Motion to Reconsider, in which he asked the court to reduce the monetary award made to wife in its January 22, 1996 letter opinion, the trial court reduced the monetary award by letter opinion issued on May 20, 1996.

The matter had been held within the breast of the court for nearly twenty months, during which time husband's businesses had begun operations.  The wife thereafter moved for reconsideration, asking, inter alia, that the court revalue the husband's interests in Gateway II and Highland.  Wife argued that during the court's delay in reaching a decision, Gateway II had begun operations and that sufficient historical earnings were now available to warrant the application of the wife's expert's methodology for valuation.  Wife's expert testified that, as of the hearing, Gateway II and Highland were earning profits, which were substantially consistent with the projections on which he had relied to project Highland's and Gateway II's future earnings.

In denying wife's motion to reopen the equitable distribution hearing to revalue the marital estate in 1996, the court concluded that it lacked the discretionary power under the provisions of Code § 20-107.3(A) to value the businesses as of a date other than that of the equitable distribution hearing.  We disagree.

Motions to reopen a hearing to take further evidence are matters within the court's discretion.  See Kirn v. Bembury, 163 Va. 891, 900-01, 178 S.E. 53, 56 (1935) ("Such motions are addressed to the sound discretion of the court . . . .  Usually, such motions are based upon error apparent on the face of the record, or for the purpose of introducing after-discovered

3

evidence."); <u>Rowe v. Rowe</u>, 24 Va. App. 123, 144, 480 S.E.2d 760, 770 (1997) (citing <u>Morris v. Morris</u>, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986)).[1]

In the present case, the trial court declined to exercise its discretion to reopen the hearing on the value of the husband's businesses after a sixteen-month delay in bringing the equitable distribution issue to closure and notwithstanding the wife's proffer that the circumstances had substantially changed. In denying the motion to reopen, the court erroneously concluded that the provisions of Code § 20-107.3(A) abrogated the court's discretionary power and confined its review of the issue to the date of the initial evidentiary hearing.[2]

_____

[1]In addition to considering newly discovered evidence and legal error as the primary bases for the exercise of discretion in reopening a hearing, <u>see, e.g.</u>, <u>Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n</u>, 24 Va. App. 377, 386, 482 S.E.2d 841, 845 (1997); <u>Hughes v. Gentry</u>, 18 Va. App. 318, 326, 443 S.E.2d 448, 453 (1994) (citing <u>Holmes v. Holmes</u>, 7 Va. App. 472, 482, 375 S.E.2d 387, 393 (1987)), Virginia courts have also included among the factors to be applied in the analysis whether a party seeking rehearing had "ample opportunity to present evidence" at the initial hearing, <u>see, e.g.</u>, <u>Old Dominion Elec. Coop. v. Virginia Elec. & Power Co.</u>, 237 Va. 385, 395, 377 S.E.2d 422, 428 (1989); <u>Rowe</u>, 24 Va. App. at 144, 480 S.E.2d at 770 (citing <u>Morris</u>, 3 Va. App. at 307, 349 S.E.2d at 663); whether the moving party's request to take additional evidence was timely, <u>Rowe</u>, 24 Va. App. at 144, 480 S.E.2d at 770; whether the moving party asserted the claim requiring rehearing at the initial hearing, <u>Brown v. Brown ex. rel. Beacham</u>, 244 Va. 319, 324, 422 S.E.2d 375, 378 (1992); <u>Dietz v. Dietz</u>, 17 Va. App. 203, 217, 436 S.E.2d 463, 472 (1993); and whether the grant of a motion to reopen a hearing would cause prejudice, delay, confusion, inconvenience, surprise or injustice to the opposing party. <u>Old Dominion</u>, 237 Va. at 397, 337 S.E.2d at 429; <u>Fink v. Huggins Gas & Oil Co.</u>, 203 Va. 86, 91, 122 S.E.2d 539, 543 (1961).

[2]In its current form, Code § 20-107.3(A) provides in

4

Prior to its amendment in 1988, Code § 20-107.3 did not fix a valuation date, and the trial court chose a valuation date if the parties could not agree to one. See Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987); see also Clements v. Clements, 10 Va. App. 580, 584 n.4, 397 S.E.2d 257, 259 n.4 (1990) (explaining the 1988 amendment). In Mitchell, 4 Va. App. at 118, 355 S.E.2d at 21, a pre-amendment case, this Court held that the trial court should generally value assets as of the date of the evidentiary hearing and not as of the date of separation, because "the date of trial will usually be the most current and accurate value available."

Following the 1988 statutory amendment, we held in Gaynor v. Hird, 11 Va. App. 588, 593 n.1, 400 S.E.2d 788, 791 n.1 (1991), that "the 1988 amendments to Code § 20-107.3(A) codified the rule announced in Mitchell." The adoption of the statutory rule fixing the evidentiary hearing as the presumptively proper date for valuation of property did not, however, change the fundamental policy objectives which underlie it, viz., that, in the interest of just and fair results, the trial court should use

relevant part:

> The court shall determine the value of any such property [of the parties] as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

a valuation date which is most likely to provide the court with the most current and accurate information available. We do not interpret the amendment to Code § 20-107.3 to preclude this objective, and we find nothing in its provisions which supports the conclusion that the court's inherent authority to reopen a hearing to take additional evidence, including more current evidence, has been curtailed by this statutory provision.[3]

Accordingly, we find that the trial court erred in concluding that Code § 20-107.3(A) barred it from reopening the hearing on the valuation of assets. The trial court's error of law with respect to its discretion to reopen the hearing was itself an abuse of discretion. As the Supreme Court has recognized, a trial court "by definition abuses its discretion when it makes an error of law." Koon v. United States, 116 S. Ct. 2035, 2047 (1996). Accordingly, we reverse and remand the case for the trial court to consider the issue of reopening the hearing in light of the relevant factors which govern its exercise of discretion.[4]

---

[3]Where, in the exercise of its discretion, the court concludes a reopening of the hearing to take more current evidence is warranted, it follows that the valuation date is the date of the reopened evidentiary hearing.

[4]We note that, on remand, the trial court retains the discretion to refuse to reopen the hearing on the valuation of assets, subject only to our possible later review for an abuse of that discretion. In the current appeal, we hold only that the trial court erred in concluding it had no such discretion. We make no comment on how the trial court should exercise that discretion on remand.

We address below the remaining claims of error regarding the valuation of husband's businesses as they may arise again in the course of the proceedings on remand.

II.

Admissibility of Expert Business Valuation Testimony

Wife appeals the valuation of two businesses developed by husband with marital funds: Gateway II, a family amusement center, and Highland, a mini-storage facility. Both parties presented the expert testimony of accountants at the equitable distribution hearing. At the time of the hearing, Highland had applied for building permits but had not begun construction, which husband's accountant stated would take a year. Gateway II had completed most of the development process and was scheduled to open for business in approximately six weeks, on December 1, 1994.

Applying the "net assets value" method of valuation, husband's expert testified that Gateway II was largely financed by debt, except for an amount husband personally invested in the project, totalling $49,144. Applying the net assets value method, husband's expert concluded that Gateway II had no value. He acknowledged, however, that Gateway II could be considered to have a value of $49,000, the amount of husband's personal investment not financed by loans. When asked how long Gateway II would have to be in operation before he could value the business using an income-based valuation method, husband's expert

responded, "I guess you could get some indications after -- after a year."

Husband's expert testified that the Highland investment property was worth the same amount as its debt and, therefore, had no value. He also opined that years would pass before Highland would have a positive cash flow.

Wife's expert placed a value on Gateway II and Highland by determining the present value of the projected future earnings of the businesses. The expert arrived at the present value of the projected future earnings by evaluating payments to husband from his partners, the history of the projects, and projections of earnings developed by husband. Wife's expert calculated the present value of Gateway II's projected future earnings to be $1,381,303 and the present value of Highland's projected future earnings to be $1,982,958.

The court granted husband's motion to strike wife's evidence of the value of Gateway II and Highland. The court concluded, "I don't think it's the law that you can get somebody to get on the stand and project earnings of a company that has done no business, has no record of income. That's pure speculation. Couldn't be more pure."

On January 22, 1996, the trial court issued an opinion letter dividing the assets between the parties. The court later determined that the opinion letter contained clerical errors and issued a corrected opinion letter, also dated January 22, 1996.

8

In the opinion letter, the court valued Gateway II at $49,144 and Highland at $0.

## A.  Motion to Strike Expert Testimony

The trial court struck wife's expert's opinion of the value of Gateway II and Highland because the expert's projections and opinion testimony were overly speculative and, by implication, unreliable.[5]  Based on the evidence presented to the court at trial, we find no error in this ruling.[6]

The fundamental infirmity in the testimony of wife's expert is that the effort failed to establish the propriety of application of the "discounted future earnings" method to determine the value of a business which is on the threshold of beginning operations and which has no historical earnings and failed to establish that such methodology would render accurate results.  "Expert testimony is admissible in civil cases to assist the trier of fact, if the evidence meets certain fundamental requirements, including the requirement that it be

_____

[5]Husband and wife both refer to the methodology of wife's expert as the "capitalization of earnings" method.  Strictly speaking, wife's expert used the "discounted future earnings" method, in which projected future income is given a present value, rather than the "capitalization of earnings" method, in which one year's earnings are multiplied by a capitalization rate.  See Alan S. Zipp, Divorce: Valuation, Tax, and Financial Strategies 20-21 (Tax Advisors Planning Series 1995) (explaining methods of valuation).  Both methods rely on the expectation of future earnings to determine the value of a business.

[6]This conclusion is based solely on the evidence presented at trial.  We voice no opinion with respect to the admissibility of the evidence upon rehearing.

based on an adequate foundation." Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995) (citing, inter alia, Lawson v. Doe, 239 Va. 477, 482-83, 391 S.E.2d 333, 336 (1990)). When a litigant claims that a particular scientific, technical or other specialized theory or technique is valid, there must be some basis for determining the validity of the proffered theory or technique. Satcher v. Commonwealth, 244 Va. 220, 244, 421 S.E.2d 821, 835 (1992) ("'Wide discretion must be vested in the trial court to determine, when unfamiliar scientific evidence is offered, whether the evidence is so inherently unreliable that a lay jury must be shielded from it, or whether it is of such character that the jury may safely be left to determine the credibility for itself.'" (quoting Spencer v. Commonwealth, 240 Va. 78, 98, 393 S.E.2d 609, 621 (1990))). Where the expert's conclusion rests on sound methodology and theory, the conclusion is admissible. See Code § 8.01-401.3.[7]

In the present case, wife failed to produce any evidence to establish the validity of her expert's methodology in the context

---

[7]Code § 8.01-401.3(A) provides:

> In a civil proceeding, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

10

of this case. Indeed, the only evidence in the case on this issue was presented by husband's expert, who testified that valuation methods which depend on earnings, such as the discounted future earnings method, are never used for the valuation of a business with no operating history. This opinion remained wholly unrebutted by wife. While we recognize that "'[t]he court may not refuse or fail to give parties a reasonable opportunity to develop and present evidence of value,'" Gottlieb v. Gottlieb, 19 Va. App. 77, 93 n.6, 448 S.E.2d 666, 675-76 n.6 (1994) (quoting Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987)), in the absence of a proper foundation for the opinion proffered by wife's expert, the court did not abuse its discretion in striking the testimony. See Satcher, 244 Va. at 244, 421 S.E.2d at 835.

### B. Valuation of Highland

Wife also challenges the trial court's valuation of Highland, contending the court used inconsistent methods in valuing Highland and Gateway II. We disagree that the trial court's reasoning was inconsistent. We will not disturb a trial court's finding of the value of an asset unless the finding is plainly wrong or unsupported by the evidence. Rowe, 24 Va. App. at 140, 480 S.E.2d at 768; Traylor v. Traylor, 19 Va. App. 761, 763-64, 454 S.E.2d 744, 746 (1995).

Husband's expert testified that Highland owned a piece of property worth $1,150,000; the debt on the property equalled the

11

asset's value.  The expert, therefore, concluded that Highland had no net asset value because its debt matched the value of its assets.  Husband's expert acknowledged that husband had invested $49,144 in Gateway II and initially stated that Gateway II had no value.  He later changed his view and stated that the value of Gateway II was $49,000 because $49,000 of the value of Gateway II was not financed by debt.

Wife argues that the trial court determined that Highland had no value based on its net asset value but valued Gateway II according to husband's capital contributions.  Starting from this premise, wife contends the court should have valued Highland at husband's capital contribution of $968,084, which she calls its "book value."[8]  The book value and adjusted book value methods of valuation require a court to value a business at the net value of assets and liabilities, which is precisely what the trial court did in valuing both Highland and Gateway II.  McDavid v. McDavid, 19 Va. App. 406, 414-15, 451 S.E.2d 713, 719 (1994) (explaining that fair market value of assets is appropriate to value a real estate holding company); Bosserman v. Bosserman, 9 Va. App. 1, 8, 384 S.E.2d 104, 109 (1989) ("[V]aluation based upon the

_____

[8]The "book value" of a business refers to assets and liabilities at their actual historical cost, no matter what the current value of the assets and liabilities might be.  The "adjusted book value" of a business adjusts the book value to reflect the current value of each asset and liability.  Zipp, supra, at 19-20.  The trial court purported to value Highland and Gateway II according to book value, although husband's expert testified to the current, rather than historical, value of the business assets and liabilities.

12

corporation's net assets has gained wide acceptance in cases where the corporation is a real estate holding company."); see also Goldberg v. Goldberg, 626 A.2d 1062, 1066 (Md. Ct. Spec. App. 1993) ("[A]djusted historical cost . . . appears an entirely appropriate way to evaluate . . . interests in newly formed companies without any earning or profit history . . . ."); In re Marriage of Bors, 839 P.2d 272, 273 (Or. Ct. App. 1992) ("[B]ook value is an appropriate technique to value a corporation that has just been formed.").  Neither book value nor adjusted book value, however, requires the court to value a business according to capital contributions without reference to liabilities.

Wife's premise that the trial court valued Gateway II according to husband's capital contributions is without merit. Although husband contributed $49,144 to Gateway II, the court considered that contribution because it represented the portion of Gateway II not financed by debt, and thus constituted a net asset.  We find that the trial court did not use inconsistent valuation methods to determine the value of the two businesses.

III.

Reduction in Marital Award

With respect to the potential tax liabilities to be addressed by the parties, wife's expert testified at the equitable distribution hearing that the parties had approximately $1,220,000 in suspended passive tax loss and $334,000 in carried-over investment interest.  The expert testified that the

13

parties could apply the approximately $1,555,000 in suspended passive losses and investment interest to offset income or capital gains for a tax benefit of $518,000. The husband's expert did not testify about the tax loss at the equitable distribution hearing.

Six months after the equitable distribution hearing, husband moved for permission to liquidate marital assets to pay approximately $100,000 in taxes. According to husband's attorney, the taxes arose from the husband's sale of stock as well as margin calls on the parties' margin account. Husband testified that, after the equitable distribution hearing, he sold $750,000 of stock in a Charles Schwab margin account to generate $250,000 to retire a debt acquired during the marriage in conjunction with husband's investment in a partnership called Birch's Crossroads. Husband thereafter filed a motion to reduce the value of the marital estate by the amount of tax liability incurred as a result of husband's court-approved sale of stock.

Granting the motion to reopen the hearing on this issue, the court took further evidence on the potential tax consequences faced by the parties as a result of the equitable distribution of their property. Husband maintained that the June 1995 sale of stock had generated an additional $307,000 in tax liability. In response to wife's expert's testimony that husband had $374,803 of tax benefits from $1,135,766 in passive losses which he could use to offset the tax liability, husband's expert stated that

14

most of the tax loss could not be used to offset tax liability because the tax loss from the defunct partnership named Birch's Crossroads would have to be reduced by husband's negative capital account in that partnership before the loss could be applied to offset other gains.  Both experts relied on tax forecasts because the tax returns had not yet been filed.

The trial court ruled that any passive losses from Birch's Crossroads would have to be offset by the gains and income from Birch's Crossroads before the losses could be used to offset any other income.  The court reduced the award from husband to wife from $200,000 to $50,000.  The difference reflected husband's additional approximate tax liability of $307,000.[9]

Code § 20-107.3(E) requires a trial court to consider the "tax consequences to each party" in fashioning an equitable distribution award.  The primary conflict in the testimony over the parties' tax liabilities was whether husband could apply his accumulated passive losses to offset capital gains from the sale of stock.  In its opinion letter of May 20, 1996, the trial court determined that the testimony of husband's expert with regard to tax consequences was more persuasive than that of wife's expert, and ordered that the award to wife be reduced from $200,000 to $50,000 to account for husband's tax liabilities.  Wife contends

---

[9]During the hearing, husband's expert revised his opinion of husband's tax liability from $307,000 to $242,434.  Wife does not argue that the court should have based its award on $242,000 rather than $307,000.

the court's determination of the parties' tax liabilities was erroneous because husband's tax consequences were speculative, were the result of husband's unilateral actions, and were offset by accumulated passive losses.

We find that the trial court did not abuse its discretion in considering the tax consequences of the distribution of assets based on tax returns which had not yet been filed. After hearing testimony and receiving memoranda on the tax consequences of the disposition of assets, the trial court found: "I don't see that there is anything artificial or made up in this. These are real life taxes that have to be paid." This finding is supported by the record, and we will not disturb it on appeal. In Arbuckle v. Arbuckle, 22 Va. App. 362, 366, 470 S.E.2d 146, 148 (1996), relied upon by wife, we disapproved consideration of tax consequences based on a hypothetical sale of an asset. The present case involves actual dispositions of assets. In Arbuckle, we stated: "Every capital asset has a value basis and, thus, a potential liability for capital gain tax upon sale. That potential liability is a proper consideration in the determination of a property division and an award, if not speculative." 22 Va. App. at 367, 470 S.E.2d at 148; see also Barnes v. Barnes, 16 Va. App. 98, 106, 428 S.E.2d 294, 300 (1993) (approving consideration of capital gains tax in equitable distribution).

The trial court in its discretion approved the sale of

16

stock, which generated part of the capital gains liability, because the proceeds of the sale reduced marital debt. Furthermore, wife knew of husband's settlement of marital debt which created an additional capital gains liability. Finally, the sale of stock due to margin calls created the remainder of the tax liability. Wife's claim that the tax consequences for which husband sought relief resulted from his unilateral action was properly rejected by the trial court. Husband's action was not unilateral but was undertaken with the knowledge of wife and the court.

We also reject wife's contention that accumulated passive losses would offset the tax liabilities. "Where experts offer conflicting testimony, it is within the discretion of the trial judge to select either opinion." Rowe, 24 Va. App. at 140, 480 S.E.2d at 768. The trial court considered the testimony and memoranda of both parties' experts on tax strategies and consequences and accepted the husband's position. This conclusion was firmly grounded in tax law, 26 U.S.C. § 469(g)(1)(A), and was a proper exercise of the trial court's discretion.

IV.

Distribution of $220,000 Reimbursement

At the equitable distribution hearing, both experts testified that husband's partner in the development of Highland had agreed to reimburse him up to $220,000 for expenses incurred

17

in conjunction with the development of Highland.  As of the date of the hearing, husband had incurred $147,000 in reimbursable expenses.  Before the court reached its decision, it held a subsequent hearing on January 20, 1995, at which husband updated the court on his financial affairs.  Husband testified he had received $220,000 in reimbursement for Highland development expenses in December 1994 or January 1995.  In its accounting of the assets subject to equitable distribution, the court included $147,500 as a "Highland L.P. Loan Receivable," the amount due to be reimbursed as of the date of the equitable distribution hearing, and considered this amount when fashioning the award to wife.  However, in fashioning the award, the court did not consider husband's receipt of the additional $72,500 in full payment of the $220,000 due him for Highland development expenses.

At a hearing on August 9, 1996, the trial court stated that it had not previously considered the reimbursement when making the equitable distribution award.  Although the earlier testimony established that husband had received $220,000, husband and both attorneys became confused as to the amount of the reimbursement, and husband testified that he had received only $200,000 in reimbursement.  The trial court increased its award to wife by $100,000, one-half of the amount supposedly reimbursed by husband's partner in Highland.

This Court will not disturb an equitable distribution award

18

"unless it is plainly wrong and without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). The trial court's $100,000 adjustment in the award was a factual error and plainly contrary to the evidence. The trial court mistakenly incorporated the $220,000 reimbursement in its award twice: once as $147,500, and a second time as $200,000. The credible evidence established that the total reimbursement was $220,000, but the trial court accounted for $347,500 of reimbursement ($147,500 plus $200,000). Rather than increasing the award to wife by $100,000 as one-half of $200,000, the trial court should have increased the award by $36,250 as one-half of the unaccounted-for $72,500, to bring the total reimbursement for Highland expenses to $220,000.

For the reasons stated, this case is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.