COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Agee[*]
Argued at Alexandria, Virginia


JAMES C. THOMAS, JR.
                                              OPINION BY
v.    Record No. 3297-01-4        JUDGE ROSEMARIE ANNUNZIATA
                                            MAY 20, 2003
SANDRA L. THOMAS


        FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
            Robert W. Wooldridge, Jr., Judge

        James C. Thomas, Jr., pro se
        (Oliver Denier Long; EZ Justice, PLC, on
        brief), for appellant.

        (Sandra L. Thomas, pro se, on brief).
        Appellee submitting on brief.


     James C. Thomas, husband, appeals the trial court's

equitable distribution award on the following grounds:  1) the

trial court erred when it classified his use of marital funds to

pay court-ordered pendente lite spousal support as marital waste;

and 2) the trial court erred when it used as a valuation date the

date of the parties' separation rather than the date of the

equitable distribution hearing.

---

        [*] Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

For the reasons that follow, we reverse the decision of the trial court.[1]

## Background

On appeal, we view the facts in the light most favorable to Sandra Thomas, wife, the party prevailing below, together with all reasonable inferences that may be drawn. <u>Richardson v. Richardson</u>, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). So viewed, the evidence establishes that the parties married on January 23, 1983, separated on February 1, 1998 and divorced on November 4, 2001. They had two children, Alexander, born on June 11, 1984, and Kelly, born on June 15, 1986.

While the parties were married, husband founded and operated his own business, Cooper Management Institute ("Cooper Management"). Wife worked for Cooper Management in an administrative capacity during the marriage.

During the marriage, the parties repeatedly used Cooper Management's working capital to pay personal obligations. Their conduct resulted in significant tax liabilities and depleted the assets of the company. In 1999, after the parties separated, an employee won a judgment against Cooper Management for $104,217, and several key employees left the company, taking many clients with them. On November 1, 2000, husband began employment with a new company, Common Ground, Inc. ("Common Ground") and no longer conducted business for Cooper Management. As of January 2001, Cooper Management had ceased all operations, had liabilities against it in excess of $400,000 and was, effectively, insolvent.

---

[1] A memorandum opinion issued simultaneously addresses husband's remaining contentions.

Counsel for the company suggested filing for bankruptcy. The record establishes that Cooper Management's failure was attributable, in part, to both parties' financial mismanagement.

After their separation, husband received a salary of $70,000 per year at Common Ground. Wife was unemployed at the time of the parties' separation but eventually began working part-time, for $8 per hour. Husband has undergraduate and law degrees. Wife attended college for one year.

The trial court granted wife's motion to have Cooper Management valued as of the date of their separation for the purposes of equitable distribution and assigned a value of $260,000 to the business, its estimated value as of February 1, 1998, when the parties separated. The trial court issued its findings and an equitable distribution award on November 4, 2001, stating:

> The court grants the motion of [wife] to value [Cooper Management] as of the date of separation. The court determines its marital property value as of February 1998 to be $260,000.
>
>     *     *     *     *     *     *     *
>
> The court awards [husband] all of the interest in Cooper Management.
>
>     *     *     *     *     *     *     *
>
> [Wife] wrongfully withdrew $23,100 from Cooper Management . . . . [She] owes [husband] sixty percent of this amount, or $19,908 . . . . [Husband] used $54,000 in marital funds to pay pendente lite spousal support. [Wife] is entitled to fifty percent . . . or $27,000. Therefore . . . [husband] owes Wife $13,140 . . . .

Husband appeals from that ruling.[2]  For the reasons that follow,

we reverse the decision of the trial court.

## Analysis

### I.  Standards of Review

> In reviewing an equitable distribution award
> on appeal, we have recognized that the trial
> court's job is a difficult one, and we rely
> heavily on the discretion of the trial judge
> in weighing the many considerations and
> circumstances that are presented in each
> case.  A decision regarding equitable
> distribution . . . will not be reversed
> unless it is plainly wrong or without
> evidence to support it.

Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768

(2000) (internal citations and quotations omitted).  Moreover,

"[t]he credibility of the witnesses and the weight accorded the

evidence are matters solely for the fact finder who has the

opportunity to see and hear that evidence as it is presented."

---

[2] Husband also claims that he used Northwest Mutual Life
Fund proceeds and Marriott Partnership dividends to pay marital
debt and marital mortgages and the trial court erred in
classifying the payments as waste.  The record fails to show
that the trial court made a finding that any such payments were
marital waste.  Therefore, we will not address these claims on
appeal.

*Sandoval v. Commonwealth*, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). In fashioning an equitable distribution award, the trial court must consider each of the statutory factors, but may determine what weight to assign to each of them.[3] *Booth v. Booth*, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). In challenging the court's decision on appeal, the party seeking reversal, in this case, husband, bears the burden of demonstrating error on the part of the trial court. *D'Agnese v. D'Agnese*, 22 Va. App. 147, 153, 468 S.E.2d 140, 143 (1996) (citing *Lutes v. Alexander*, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992)).

## II. Marital Waste

Husband contends the trial court erred when it classified his use of marital funds to pay *pendente lite* support as waste. We agree.

Waste occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *Smith v. Smith*, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994). "To allow one spouse to squander marital property is to make an equitable award impossible." *Booth v.*

---

[3] Code § 20-107.3(E) lists the factors a court must consider when determining the amount of a division of marital property, and includes in subsection (2) the "contributions, monetary or non-monetary, of each party in the acquisition and care and maintenance of such marital property of the parties."

Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988) (citing Sharp v. Sharp, 473 A.2d 499, 505 (Md. Ct. Spec. App. 1984)).

Whether the payment of court-ordered spousal support from marital funds constitutes waste is a question of first impression in Virginia. We have held consistently, however, that the expenditure of marital funds for items such as voluntary support, living expenses, attorney's fees, and other necessities of life constitutes a valid marital purpose and is not waste. See, e.g., Anderson v. Anderson, 29 Va. App. 673, 695, 514 S.E.2d 369, 381 (1999) (mortgages, credit cards); Alphin v. Alphin, 15 Va. App. 395, 402, 424 S.E.2d 572, 576 (1992) (voluntary support, medical bills for wife); Amburn v. Amburn, 13 Va. App. 661, 414 S.E.2d 844 (1992) (personal living expenses, attorney's fees, child's tuition, car loans); Clements v. Clements, 10 Va. App. 580, 397 S.E.2d 257 (1990) (household expenses, child's tuition).

In Alphin, husband deposited $95,000 of marital funds into a bank account that was under his sole dominion and control. He submitted a complete list of his expenditures from the account to the trial court, which established that he paid various bills relating to the marriage with the funds, including voluntary spousal support to wife of $6,600 per month. In upholding the trial court's decision, we stated:

> We have held that the use of funds for living expenses while the parties are separated does not constitute dissipation . . . . The evidence proves that all the expenditures were for a proper purpose. The wife presented no evidence to the contrary.

Alphin, 15 Va. App. at 403, 424 S.E.2d at 576. We find no reason to distinguish between voluntary and court-ordered spousal

- 6 -

support in the application of marital waste jurisprudence.  In both cases, the expenditure is for a valid marital purpose and does not constitute dissipation of marital assets in a deliberate attempt to affect a monetary award.  See id.

In the case at bar, the trial court found that husband used $54,000 of marital funds from the couple's Northwest Mutual Life Fund proceeds and Marriott Partnership dividends to pay court-ordered pendente lite spousal support.  The court treated the expenditure as marital waste and credited wife with 50% of the total sum.  We find this to be error as a matter of law, in light of our decisions in Alphin and other cases involving marital waste.

### III.  Date of Valuation

Husband asserts that the trial court should have valued Cooper Management at the date of the equitable distribution hearing, rather than at the date of separation, because its value at the time of the hearing was, effectively, zero.  We agree. Generally, a date as near as possible to the evidentiary hearing should be used for valuation purposes.  Mitchell v. Mitchell, 4 Va. App. 113, 119, 355 S.E.2d 18, 21 (1987); see also Code § 20-107.3.[4]  We have held that, in the interests of just and fair

---

[4] In 1988, the General Assembly codified the rule as set forth in Mitchell.  Code § 20-107.3 provides:

> A.  Upon decreeing the dissolution of a marriage . . . the court, upon request of either party, shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is

results, the trial court should choose the valuation date which is most likely to provide the most current and accurate information available and thus lead to an equitable award. Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 440 (1998); see also Code § 20-107.3.  "'The value of the assets determined as near as practicable to the date of trial will usually be the most current and accurate value available.'" Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 791 (1991) (quoting Mitchell, 4 Va. App. at 118, 355 S.E.2d at 21)).  On appeal, we review the court's determination of a valuation date

---

marital property, and which is part separate and part marital property in accordance with subdivision A 3.  The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue.  Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used . . . .

for abuse of discretion.  Shooltz, 27 Va. App. at 271, 498 S.E.2d at 440.

In the case at bar, the parties separated in February 1998 and the equitable distribution hearing occurred three years later, in 2001.  The trial court granted wife's motion to value the company as of February 1998 and assigned Cooper Management a value of $260,000.  We find the ruling to be an abuse of discretion because the record shows that the company's value in February 1998 was not the most accurate and current information available.

Although the company's value in February 1998 was approximately $260,000, its value was zero as of February 2001.  In 1999, the company incurred a debt to its bank on a line of credit in the amount of $200,000, had a judgment entered against it for $104,271 by an employee, and suffered the loss of several key employees, who took many of Cooper Management's clients with them.  Husband ceased working for the company on November 1, 2000, when he began a new job with Common Ground.  Thus, by the date of the equitable distribution hearing, in March 2001, the company had ceased doing business and was insolvent; its total liabilities were estimated at $460,000.  There was no evidence before the trial court that Cooper Management had the capacity to generate income in the future; it no longer had employees and the company's founder and president, husband, was working elsewhere.  Moreover, the trial court noted in its equitable distribution award that the company's financial downfall resulted, in part, from both parties' financial mismanagement.  Thus, the valuation date adopted by the trial court, viz. the date of the parties'

separation, was not one of "just and fair results," nor was it "most likely to provide the most current and accurate information available."  Accordingly, we find the trial court abused its discretion in valuing the company on the date of the parties' separation.

We reverse and remand the case to the trial court on the foregoing issues for an equitable distribution award consistent with this opinion.

<u>Reversed and remanded.</u>

Present:   Judges Elder, Annunziata and Agee[*]
Argued at Alexandria, Virginia


JAMES C. THOMAS, JR.
                                    MEMORANDUM OPINION[**] BY
v.    Record No. 3297-01-4       JUDGE ROSEMARIE ANNUNZIATA
                                         MAY 20, 2003
SANDRA L. THOMAS


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  Robert W. Wooldridge, Jr., Judge

            James C. Thomas, Jr., pro se
            (Oliver Denier Long; EZ Justice, PLC, on
            brief), for appellant.

            (Sandra L. Thomas, pro se, on brief).
            Appellee submitting on brief.


     James C. Thomas, husband, appeals the trial court's

equitable distribution award on the following grounds: 1) the

trial court failed to consider the full extent of wife's marital

waste; 2) the trial court failed to consider the costs husband

incurred to maintain mortgages on marital property after the

couple's separation; 3) the trial court erred when it imputed

greater income to husband than his salary, failed to impute

income to wife and failed to conclude she voluntarily

impoverished herself; 4) the trial court erred in awarding wife

attorney's fees; 5) the trial court failed to impute a negative

non-monetary contribution to wife; and 6) the trial court erred

_____

          [*] Justice Agee participated in the hearing and decision
of this case before his investiture as a Justice of the Supreme
Court of Virginia.

          [**] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

when it reopened the record after the equitable distribution hearing to permit wife to introduce additional evidence. For the reasons that follow, we affirm the trial court's decision as to these issues.[5]

## Background

On appeal, we view the facts in the light most favorable to Sandra Thomas, wife, the party prevailing below, together with all reasonable inferences that may be drawn. Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). So viewed, the evidence establishes that the parties married on January 23, 1983, separated on February 1, 1998 and divorced on November 4, 2001. They had two children, Alexander, born on June 11, 1984, and Kelly, born on June 15, 1986.

While the parties were married, husband founded and operated his own business, Cooper Management Institute ("Cooper Management"). Wife worked for Cooper Management in an administrative capacity during the marriage.

The parties repeatedly used Cooper Management's working capital to pay personal obligations. Their conduct resulted in significant tax liabilities and depleted the assets of the company. Cooper Management ceased doing business after the parties' separation. The trial court found that the company's economic failure was attributable to both parties' financial

---

[5] A published opinion issued simultaneously addresses husband's contention that the trial court erred when it determined his use of marital funds to pay court-ordered pendente lite spousal support was error and that the trial court erred in using the date of separation to value the parties' business. On those issues, we agreed with husband and reversed and remanded the case to the trial court for an equitable

mismanagement and the subsequent departure of several employees.

After the parties separated, husband became a consultant with Common Ground Seminars, Inc. and earned a salary of $70,000 per year. Wife was unemployed at the time of the parties' separation but eventually began working part-time, for $8 per hour. Husband has undergraduate and law degrees. Wife attended college for one year.

After the close of the equitable distribution hearing on March 5, 2001, the court held a supplemental hearing, on September 6, 2001, to take additional evidence regarding a pension and 401-K fund. The trial court issued its findings and an equitable distribution award on November 4, 2001, stating:

> The court grants the motion of [wife] to value [Cooper Management] as of the date of separation. The court determines its marital property value as of February 1998 to be $260,000.
>
>     *    *    *    *    *    *    *
>
> The court awards [husband] all of the interest in Cooper Management.
>
>     *    *    *    *    *    *    *
>
> [Wife] wrongfully withdrew $23,100 from Cooper Management . . . . [She] owes [husband] sixty percent of this amount, or $19,908 . . . . [Husband] used $54,000 in marital funds to pay pendente lite spousal support. [Wife] is entitled to fifty percent . . . or $27,000. Therefore . . . [husband] owes Wife $13,140 . . . .
>
>     *    *    *    *    *    *    *
>
> For the purposes of spousal support, I impute income to [husband] of $140,000 . . . [and] order that [husband] pay [wife] $2,500 in monthly spousal support.

---

distribution award consistent with our opinion.

* * * * * * *

> The court awards [wife] $15,000 in attorney's
> fees. Sixty percent of the $15,000 she
> withdrew from Cooper Management . . . is a
> credit to [husband] on that sum.

## Analysis

### I. Standards of Review

> In reviewing an equitable distribution award
> on appeal, we have recognized that the trial
> court's job is a difficult one, and we rely
> heavily on the discretion of the trial judge
> in weighing the many considerations and
> circumstances that are presented in each
> case. A decision regarding equitable
> distribution . . . will not be reversed
> unless it is plainly wrong or without
> evidence to support it.

Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768

(2000) (internal citations and quotations omitted). Moreover,

"[t]he credibility of the witnesses and the weight accorded the

evidence are matters solely for the fact finder who has the

opportunity to see and hear that evidence as it is presented."

Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730,

732 (1995). In fashioning an equitable distribution award, the

trial court must consider each of the statutory factors, but may

determine what weight to assign to each of them.[6] Booth v.

Booth, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). In

challenging the court's decision on appeal, the party seeking

reversal, in this case, husband, bears the burden of

demonstrating error on the part of the trial court. D'Agnese v.

---

[6] Code § 20-107.3(E) lists the factors a court must consider
when determining the amount of a division of marital property
and includes in subsection (2) the "contributions, monetary or
non-monetary, of each party in the acquisition and care and
maintenance of such marital property of the parties."

D'Agnese, 22 Va. App. 147, 153, 468 S.E.2d 140, 143 (1996) (citing Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992)).

## II. Marital Waste

Prior to the couple's separation, wife withdrew $117,850 of marital funds from the Cooper Management account. The trial court treated $38,100 of the sum as waste and credited husband with 60% of the amount.[7] Husband contends the trial court erred in not treating the entire amount, $117,850, as waste. We disagree.

---

[7] The trial court found the following withdrawals by wife improper: $15,000 to pay her attorney's retainer; $10,000 as salary for her work at Cooper Management; and $13,100 she paid to her son, Ryan, which eventually was deposited in her separate account.

Waste occurs "where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Smith v. Smith, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994). Funds used for a proper purpose, such as living expenses or attorney's fees or "other necessities of life while the parties are separated," do not constitute marital waste. Anderson v. Anderson, 29 Va. App. 673, 694-95, 514 S.E.2d 369, 380 (1999).

Wife provided the court with bank statements and cancelled checks from the couple's joint checking account, totaling in excess of $100,000, which establish that wife used the withdrawn funds for "necessities of living." A review of the checks wife submitted shows expenditures for prescription drugs, medical treatment, children's tuition, sports and equipment, tutoring, credit card payments, utilities, food, home maintenance, holiday expenses, postage, dry cleaners, Girl Scouts, entertainment, pet care, subscriptions, clothing and mortgage payments. The trial court was free to accept wife's testimony regarding her use of the funds and, when coupled with the submitted checks, we cannot say that there was no evidence to support the trial court's finding that wife did not waste the marital funds other than those previously credited to husband. See Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732. Thus, the record supports the trial court's decision that $79,750 of the $117,850 wife withdrew from Cooper Management was not marital waste. See Alphin v. Alphin, 15 Va. App. 395, 403, 424 S.E.2d 572, 576 (1992).

### III. Mortgage Payments and Home Improvements

Husband contends the trial court improperly failed to

consider the costs he incurred to maintain mortgages and improve marital property after the parties' separation. He argues wife bore some of the responsibility for those obligations yet paid none of them. We find no error in the trial court's rulings on this issue.

Husband provided the court with photographs of the marital home, which purportedly showed improvements he made and paid for after wife left the home. The photographs, however, were undated, digital reproductions. The trial court was free to determine that they either reflected no discernible improvements, or that they were not accurate portrayals of the home after wife's departure. Husband also testified that the debt he incurred was the result of improvements he made to the home. Other than general credit card statements, which do not itemize the alleged improvements, husband offered no evidence that the funds were used for the claimed improvements. With respect to husband's claim that he paid wife's mortgage obligations, husband presented no evidence whatsoever to support his contention.

In short, the evidence, viewed in the light most favorable to wife, does not support husband's contention that he made payments for the care and maintenance of the marital home, for which he should have received credit, or that he paid wife's mortgage obligations. Thus, we find the trial court properly excluded the purported payments from consideration in the equitable distribution award.

## IV. Imputation of Income

Husband next asserts that, for the purposes of awarding spousal support, the trial court erroneously imputed income to

him that was greater than his current salary.  The court found husband voluntarily underemployed and fixed his income at $140,000 per year, $70,000 more than his salary at the time.  He contends the court erroneously failed to consider current circumstances and those "within the immediate or reasonably foreseeable future."  Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990).  He argues there is no evidence he earned $140,000 in the past and no evidence to support a finding that the figure reflected the income he would enjoy in the immediate future.  We disagree.

The parties' tax forms establish that husband earned $391,450 in 1990 and $492,513 in 1997.  Additionally, husband has a law degree and extensive business experience in the seminar field, as founder and president of Cooper Management, a marketing and seminar company, and as an employee with Common Ground.  We thus hold that the record supports an imputed income in the amount of $140,000.

Husband further asserts the trial court erred in failing to impute income to wife and to conclude she voluntarily impoverished herself.  He argues that, in the early years of their marriage, wife earned an annual salary of approximately $36,000, held a real estate license, and worked as a property manager.  He contends she worked part-time at Cooper Management as an administrator and bookkeeper and ultimately acquired and managed a full staff.  Husband argues wife made no effort to find comparable full-time employment after she left Cooper Management.

A "refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence."  Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999).  Furthermore, "[t]he burden is on the party seeking imputation to prove that the other [party] was voluntarily foregoing more gainful employment, either by producing evidence of a     higher-paying former job or by showing that more lucrative work was currently available."  Niemiec v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citations omitted).

In the case at bar, the trial court found that husband offered no evidence regarding jobs that "may be available to [wife] and what salaries they may provide."  In addition, the court accepted wife's testimony that she never earned a salary of $36,000, that she did not hold a real estate license, and that she never held the title "bookkeeper" at Cooper Management, where her duties were "largely administrative."  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval, 20 Va. App. at

138, 455 S.E.2d at 732.

The trial court further determined that wife's experience dating from the 1980s was too remote in time to be relevant to the determination of her income in 2001.  See Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993) (finding a trial court may impute income based on evidence of recent past earnings).  Thus, the court fixed wife's income at $8 per hour, her most recent wage, or $16,640 annually.  Given the evidence regarding the parties' respective job experience and future prospects, we find the trial court did not err in its decision.

## V.  Attorney's Fees

Husband contends the trial court abused its discretion when it awarded attorney's fees to wife, on the ground that she failed to support her fee affidavit with expert testimony establishing the reasonableness of the attorney's hourly rates and legal services rendered.  We disagree.

An award of attorney's fees is within the sound discretion of the trial court, Wilkerson v. Wilkerson, 214 Va. 395, 398, 200 S.E.2d 581, 584 (1973), and is not to be disturbed on appeal absent an abuse of discretion.  Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976).  The key to a proper award is reasonableness under all the circumstances.  McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).  Moreover, the party seeking fees is not required to proffer expert testimony on the reasonableness or accuracy of those fees in all cases.  See Seyfarth, Shaw v. Lake Fairfax Seven, Ltd., 253 Va. 93, 96-97, 480 S.E.2d 471, 480 (1997).

In this case, wife provided the trial court with a detailed

billing statement, which documented her attorney's fees and specifically set forth the charges and a description of services rendered for the billed hours.  The statement reflected that wife incurred over $140,000 in attorney's fees.  Viewing this evidence in the light most favorable to wife, we find wife was not required to proffer an expert witness to establish the reasonableness of the fees and services provided, and we affirm the trial court's award of $15,000 in attorney's fees.

## VI.  Negative Non-Monetary Contribution

Husband argues the trial court should have imputed a negative non-monetary contribution to wife based on her conduct before the separation.  Specifically, he argues her conduct in "bleeding Cooper Management of operating capital, secreting its operating ledger, threatening employees, and terminating her employment" were negative economic and non-economic contributions to the marital estate, which the trial court erroneously failed to consider as a factor in making its decision.  See Joynes v. Payne, 36 Va. App. 401, 430, 551 S.E.2d 10, 24 (2001) (upholding a trial court's negative non-monetary contribution determination, where the evidence established wife's conduct in terminating her employment was a leading factor in dissolution of marriage and had an effect on marital assets).

The evidence does not support husband's contention that wife was responsible for the financial collapse of Cooper Management. In fact, the trial court found both parties at fault in the company's financial mismanagement and stated "there is no evidence" that wife's actions led to the "financial ruin" of Cooper Management.  Finding no evidence to the contrary, we

affirm.

## VII. <u>Supplemental Hearing</u>

Husband argues the trial court erred when it re-opened the record for a supplemental hearing and allowed wife to present additional evidence regarding the parties' pension and 401-K funds. He contends wife had the current information on the funds before the trial. <u>See</u> <u>Williams v. People's Life Ins. Co.</u>, 19 Va. App. 530, 532, 452 S.E.2d 881, 883 (1995) (finding that the prerequisites for re-opening a trial record include: 1) the evidence was obtained after the hearing and 2) it could not have been obtained prior to the hearing through the exercise or reasonable diligence). We disagree.

A decision "to hear additional evidence is within the sound discretion of the trial court." <u>Calvin v. Calvin</u>, 31 Va. App. 181, 184, 522 S.E.2d 376, 378 (1997) (citing <u>Rowe v. Rowe</u>, 24 Va. App. 123, 144, 480 S.E.2d 760, 770 (1997)); <u>see also</u> <u>Morris v. Morris</u>, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). Wife made a demand on husband before the equitable distribution hearing for supplementation of his discovery responses so that wife could have the most current values of the parties' pension and 401-K. Husband failed to supplement his responses. At husband's deposition, on February 26, 2001, wife did not have the current values and, therefore, was limited in her discovery of the values of those marital assets. Husband's counsel refused to contact the fund administrator to establish the current values for the purposes of equitable distribution. At that time, he stated he would provide the details to wife at trial. Wife never received the current values and relied on old values when

completing her Pension Disclosure Sheet for equitable distribution.  Thus, the record establishes that wife justified holding a supplemental hearing to determine the exact amount of money contained in the pension and 401-K funds because husband improperly failed to provide her with the relevant financial details on numerous occasions.  Therefore, the trial court did not abuse its discretion in reopening the hearing.

## VIII. <u>Conclusion</u>

In summary, we find the trial court did not err in 1) determining wife's use of marital funds was not waste; 2) not considering alleged costs husband incurred to maintain mortgages on marital property after the couple's separation and to improve the property; 3) imputing income to husband, but not wife; 4) awarding wife $15,000 in attorney's fees; 5) not imputing to wife a negative non-monetary contribution; and 6) re-opening the record after trial to permit wife to introduce additional evidence. Accordingly, we affirm the decision of the trial court as to these issues.

<u>Affirmed.</u>