COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Retired Judge Overton[*]
Argued at Richmond, Virginia


GREGORY D. PEARSON

                                                    MEMORANDUM OPINION[**] BY
v.        Record No. 2142-05-2                      JUDGE JEAN HARRISON CLEMENTS
                                                    JULY 25, 2006
DELLA G. PEARSON


             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                          Herbert C. Gill, Jr., Judge

            Bruce E. Arkema (Cantor Arkema, P.C., on briefs), for appellant.

            Richard L. Locke (Robert W. Partin; Locke & Partin, PLC, on brief),
            for appellee.


        Gregory D. Pearson (husband) appeals from the equitable distribution award to Della G.

Pearson (wife) in the final decree of divorce.  Husband contends the trial court erred (1) in including

$22,330 worth of equity line advances he obtained during the marriage in the marital estate and

(2) in denying his motion to value the marital business as of the date of separation or, alternatively,

in failing to credit him for his post-separation contributions and efforts that increased the value of

that business.  Wife requests an award of attorney's fees and costs incurred in defending this appeal.

For the reasons that follow, we affirm the judgment of the trial court and deny wife's request for

appellate attorney's fees and costs.


────────────────────

        [*] Judge Overton took part in the consideration of this case prior to the effective date of
his retirement as senior judge on June 30, 2006 and thereafter by designation pursuant to Code
§ 17.1-400(D).

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

The parties were married in 1989. No children were born of the marriage. Husband owned the marital residence prior to the parties' marriage but transferred the property by deed of gift to wife and himself as tenants by the entirety in January 1994. Following that transfer, husband obtained various advances from equity lines of credit secured by the marital residence. Those advances were paid off during the marriage using marital funds. In 1995, husband and wife started a local newspaper, *The Observer*, which they ran from their home. The parties separated on September 25, 1998.

In June 2002, wife filed for divorce and requested equitable distribution of the parties' marital assets and liabilities. On May 4, 2004, husband filed a motion seeking to have the trial court determine the value of *The Observer* as of the date of the parties' separation. After conducting an evidentiary hearing on husband's motion, the trial court issued a letter opinion on June 18, 2004, denying husband's motion.

The trial court heard evidence *ore tenus* regarding equitable distribution on December 10, 2004, and February 25, 2005, and received into evidence numerous documents. On June 30, 2005, the trial court issued a letter opinion finding that *The Observer* was a marital asset with a value of $182,000. The trial court also found that $22,330 worth of equity line advances received by husband between August 1994 and April 1997 was marital property subject to distribution. The trial court further determined that the total value of the marital estate was $800,504 and concluded, after considering all the factors of Code § 20-107.3(E), that wife was entitled to "55% of the value

- 2 -

of the marital assets." After denying husband's motion to reconsider, the trial court incorporated its letter opinion regarding equitable distribution into the final decree of divorce entered on August 8, 2005, and this appeal followed.

## II.  EQUITABLE DISTRIBUTION

We are mindful, in resolving the equitable distribution issues before us in this appeal, of the following legal principles.  "In reviewing an equitable distribution award on appeal, we recognize that the trial court's job is a difficult one."  Shackelford v. Shackelford, 39 Va. App. 201, 210, 571 S.E.2d 917, 921 (2002).  "The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably."  Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988).  "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).  Thus, "[a]s long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal."  Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Moreover, "[a]s an appellate court, we view the evidence, and all reasonable inferences flowing from the evidence, in a light most favorable to wife as the party prevailing below."  Miller v. Cox, 44 Va. App. 674, 678, 607 S.E.2d 126, 128 (2005).  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003).

### A.  Equity Line Advances

Husband contends the $22,330 worth of equity line advances should not have been included in the marital estate because those advances did not constitute "waste."  They were not waste, he

argues, because there was no evidence that they were obtained or used "'in anticipation of divorce or separation . . . [or] at a time when the marriage [was] in jeopardy.'" Smith v. Smith, 18 Va. App. 427, 430, 444 S.E.2d 269, 272 (1994) (quoting Booth, 7 Va. App. at 27, 371 S.E.2d at 572). Thus, husband concludes, the trial court erred in determining that the $22,330 worth of equity line advances was marital property subject to equitable distribution.

Husband bases his claim of error exclusively on the premise that the trial court found husband committed waste with respect to the $22,330 worth of equity line advances. That premise, however, as wife points out, does not correctly reflect the trial court's ruling.

Addressing the issue of waste with respect to two marital investment accounts of the parties, the trial court noted in its June 30, 2005 letter opinion as follows:

> Waste is defined as the "dissipation of marital funds *in anticipation of divorce or separation* for a purpose unrelated to the marriage and in derogation of the marital relationship *at a time when the marriage is in jeopardy*." Booth v. Booth, 7 Va. App. 22, 27[, 371 S.E.2d 569, 572 (1988)]. "Once the aggrieved spouse shows that the marital funds were withdrawn or used *after the breakdown*, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 586-87[, 397 S.E.2d 257, 261] (1990).

(Emphases added.) After resolving the issue of waste, the court turned its attention to the issue whether various equity line advances obtained by husband during the marriage should be included in the marital estate:

> [Wife] has requested of the Court to trace unaccounted and unexplained equity line advances as marital property. These advances date from 4/12/93 to 5/27/97, *a period which predates the separation by years*. The Court has previously ruled that the $75,000 equity line that was secured by the marital home while the marital home was the separate property of [husband] will not be considered marital property. The equity line only served to reduce the value of separate property prior to the separate property becoming marital property. . . . Thus the $75,000 is classified as separate property. The balance of $22,330 is classified as marital property since the

- 4 -

> equity line advances received by [husband] have not been identified
> as having been spent for reasonable and necessary expenses.

(Emphasis added.)

Husband argues that the trial court's statement that the $22,330 worth of equity line advances received by husband was not shown to have been used "for reasonable and necessary expenses" indicates the court determined that husband committed waste as to those advances. However, by focusing on a few isolated words of the court's ruling and ignoring the context in which they are used, husband misapprehends the trial court's ruling. Given the court's express recognition that waste occurs only "at a time when the marriage is in jeopardy," Booth, 7 Va. App. at 27, 371 S.E.2d at 572, and its explicit finding that all of the equity line advances at issue in this case were obtained by husband well before the parties' separation, it is clear, despite husband's assertion to the contrary, that the court did not find husband committed waste with respect to the $22,330 worth of equity line advances.

Moreover, the record clearly indicates that the issue of waste was not before the trial court with regard to the contested equity line advances. Neither party raised the subject of waste below in connection with those advances. At the equitable distribution hearing, wife merely attempted to demonstrate that, between April 1993 and May 1997, husband received certain marital equity line advances that were not deposited into any account identified by husband and thus remained unaccounted for at the time of the hearing. With respect to the $22,330 worth of equity line advances, she argued in her closing brief:

> This $22,330.00 represents specific equity line advances that
> Husband received during the latter years of the parties' marriage,
> sums that were never deposited or accounted for in any fashion.
> Consequently, *the Court should conclude that Husband still has this
> $22,330 in some account or in cash* and equitably divide that asset.

(Emphasis added.)

For his part, husband made no attempt to defend himself against a charge of waste.  Instead, he merely attempted to show at the hearing that the contested equity line advances were accounted for and argued in his closing brief as follows:

> Notwithstanding the fact that the law does not require [husband] to "explain" the purpose of every dime that was either borrowed and spent or spent during the marriage *when the marriage was not in the process of being terminated*, he has done so.  Furthermore, *the only relevance to this inquiry can be whether or not there are undisclosed marital assets*.  [Husband] has testified under oath that there are none to his knowledge and that no money from advances on equity lines or loans secured by [the marital residence] have been hidden *or used for any purpose other than purchasing disclosed assets or for household expenses*.
> Accordingly, [husband] respectfully requests that the Court deny [wife's] request for an award based on alleged unexplained advances on loans secured by [the marital residence].

(Emphases added.)

Read in these contexts, it is clear that the trial court's ruling on the equity line advances is a resolution not of the issue of waste but of the issue framed by the parties, and indicates that the court determined that husband failed, for purposes of equitable distribution, to account for the $22,330 worth of equity line advances he received during the marriage.  Because they were unaccounted for, the court found the advances were extant marital property and thus subject to distribution.

Viewed in the light most favorable to wife, the record supports the trial court's judgment.  The evidence established that, during the marriage, husband received various equity line advances that were secured by the marital residence and repaid using marital funds.  Husband testified that he generally deposited the equity line advances he received into wife's checking account for her to use to pay living expenses and to purchase stock.  Wife testified that, using her bank statements and the copious financial records provided by husband just three weeks before

the first equitable distribution hearing,[1] she performed an analysis of all of the documented

equity line advances obtained by husband during the marriage, most of which she "never knew

about" until receiving husband's documentation. Tracing each of the equity line advances

received by husband, wife determined that most of the equity line advances were accounted for

because they had been deposited into accounts in her name or accounts identified by husband.

Wife further testified, however, that she found five advances totaling $22,330 that were never

deposited into any account in her name or any account identified by husband. Wife explained

that, having reviewed "all the records for accounts in [her] name and all bank records for all the

accounts that [husband] claimed he had," she found no evidence that explained what had

happened to those advances. Although this evidence does not directly show that husband still

had the unaccounted-for $22,330 worth of equity line advances at the time of the equitable

distribution hearing, it clearly permits that reasonable inference.

Attempting to refute wife's evidence, husband testified at the hearing that none of the

equity line advances he obtained during the marriage still existed at the time of the hearing and

that he never deposited any equity line advance in an account he had "not disclosed to the

Court." He also explained that the five equity line advances identified by wife as having never

been deposited into an identified account "would have been deposited" into wife's checking

account to purchase stock. He provided no documentation, however, showing that the advances

were so deposited. As previously mentioned, "[t]he credibility of the witnesses and the weight

accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear

that evidence as it is presented." Thomas, 40 Va. App. at 644, 580 S.E.2d at 505; see also

Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999) ("The trier of fact . . .

has the discretion to accept or reject any of the witness' testimony."). Hence, the trial court had

---

[1] The record shows husband's continuing abuse of the discovery process in this case.

- 7 -

broad discretion to weigh the credibility of the conflicting evidence presented in this case, and we cannot say it abused its discretion in crediting wife's testimony over husband's. Thus, we will not disturb the court's credibility determination on appeal.

Because we cannot say the trial court's ruling with respect to the unaccounted-for $22,330 worth of equity line advances received by husband during the marriage is plainly wrong or without evidence to support it, we hold that the trial court did not err in including those advances in the marital estate.

### B. Marital Business

Husband contends the trial court improperly valued and divided the parties' marital business, *The Observer* newspaper. Specifically, he argues the trial court erred in denying his motion to value *The Observer* as of the date of separation rather than the date of the equitable distribution hearing. Husband further argues that, assuming *arguendo* that the trial court's decision to value the newspaper as of the hearing date was correct, the court erred when dividing that asset in failing to credit him for his "post-separation contributions and efforts that dramatically increased the value of the marital asset." Wife argues that, in light of the evidence presented, the trial court's valuation of *The Observer* was proper. We agree with wife.

### 1. Alternate Valuation Date

Code § 20-107.3(A) provides, in pertinent part, as follows:

> The court shall determine the value of [marital and hybrid] property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less then 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

"We have stressed that the trial judge in evaluating marital property should select a valuation [date] 'that will provide the court with the most current and accurate information available which avoids inequitable results.'" Gaynor v. Hird, 11 Va. App. 588, 593, 400 S.E.2d 788, 790 (1991)

(quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)).  For instance, as we noted in Mitchell, "if the value of marital property increases [after the parties' separation] due to the efforts of one of [the parties], values determined upon the date of trial may result in a monetary award which is not 'fair and equitable' as required by Code § 20-107.3."  4 Va. App. at 118, 355 S.E.2d at 21.  Thus, in such a case, the trial court should select a valuation date prior to the date of the equitable distribution hearing.  Id.  The burden is on the party moving for an alternate valuation date to show good cause why the requested alternate valuation date should be used rather than the date of the equitable distribution hearing.  See Goodhand v. Kildoo, 37 Va. App. 591, 599, 560 S.E.2d 463, 466 (2002) ("[T]he burden is on the moving party to show a right to the relief sought."); Gottlieb v. Gottlieb, 19 Va. App. 77, 87, 448 S.E.2d 666, 672 (1994) ("The burden [is] on the parties to provide the trial court with sufficient evidence as to the most appropriate valuation date . . . .").

Here, husband moved to have the trial court determine the value of *The Observer* as of the date of the parties' separation.  In support of that motion, he asserted that the value of *The Observer* had increased following the parties' separation due to his sole post-separation efforts.  Thus, he argued, the trial court should value *The Observer* as of the separation date in order to avoid an inequitable result.

As husband points out on appeal, husband presented extensive evidence at  the hearing on his motion that "the newspaper was . . . dramatically altered after the separation."  Despite that evidence, however, husband failed to show good cause why the valuation date should be the date of separation rather than the date of the evidentiary hearing.  Husband never testified that the value of *The Observer* increased after the parties' separation.  Nor did he offer any other evidence at the hearing on his motion regarding the value of the business at the time of the separation or the time of the hearing.  Indeed, husband concedes on appeal that he presented no

"evidence that the value of *The Observer* was different at the date of the equitable distribution hearing than at the date of separation." Thus, the trial court had no evidence before it that permitted it to conclude that the value of the newspaper had increased following the parties' separation.[2]

Absent evidence permitting the trial court to grant husband the relief he requested, we cannot say the trial court erred in denying husband's motion for an alternate valuation date.

2. Division

"The judgment of the trial court is presumed correct and he who asserts the contrary is required to overcome the presumption by record proof . . . ." Kaufman v. Kaufman, 7 Va. App. 488, 499, 375 S.E.2d 374, 380 (1988). Hence, "[t]he burden is upon the party appealing to point out the error in the decree and to show how and why it is wrong. The decree stands until that burden has been met." Id. (citation omitted).

> Where an asset that is subject to equitable distribution is retained by one of the parties for a period of time . . . before the equitable division occurs and the asset significantly increases or decreases in value during that time through neither the efforts or fault of either party, neither party should disproportionately suffer the loss or benefit from the windfall.

Rowe v. Rowe, 33 Va. App. 250, 264, 532 S.E.2d 908, 915 (2000).

Husband argues on appeal that, having denied his motion to value *The Observer* as of the date of the parties' separation, the court should have credited him for his "extraordinary and significant post-separation efforts to turn *The Observer* from an asset worth nothing to an asset that was worth $182,000." The trial court, he concludes, erred in allowing wife to share in that part of the increased value that, because it was due solely to his extraordinary efforts and contributions, was his separate property. We disagree.

---

[2] Because husband did not renew his motion at the equitable distribution hearing, we need not consider whether such evidence was presented at that hearing.

Even were we to assume, without finding, that *The Observer* increased in value between the date of the parties' separation and the date of the equitable distribution hearing, no evidence established that any part of such increase occurred solely due to any extraordinary effort or contribution on husband's part, beyond the effort he was already making before the separation to develop and run the newspaper. Although husband presented evidence showing that the newspaper's format and content changed and that its circulation increased following the parties' separation, no evidence established that the value of the newspaper increased due solely to husband's efforts and contributions.

Any increase could just as easily have been attributable to husband's and wife's pre-separation contributions and efforts to organize and develop the newspaper. Much of the paper's early funding came from wife, who worked full-time outside the home. Both parties contributed to the paper's organization, development, and operation. Husband, who received a salary from the business, managed the daily operations of the business, while wife, who received no compensation for her services, provided computer, proofreading, editing, and data-collection assistance. Indeed, wife developed the computer program that allowed the parties to obtain and publish local real estate sales information, which remained a significant area of focus of the paper following the parties' separation. Moreover, wife remained active in the newspaper's operation well after the separation until July 2000. Some of the newspaper's post-separation changes had occurred or been planned by then. Likewise, as wife's expert testified, any post-separation increase in the value of the newspaper could just as easily have been attributable to post-separation factors not directly within husband's control, such as an increase in the local population which resulted in increased circulation and advertising revenue.[3]

---

[3] Wife's expert testified that *The Observer* was a free newspaper that was delivered to homes and businesses without a subscription. Wife's expert further testified that the paper made money through advertising sales, the rates of which were based on the paper's circulation. Thus,

Absent any evidence in the record permitting the trial court to determine the extent, if any, that husband's extraordinary, post-separation efforts and contributions resulted in an increase in *The Observer*'s value, we conclude that husband has not carried his burden of proving by the record that the trial court committed reversible error. Kaufman, 7 Va. App. at 499, 375 S.E.2d at 380. Accordingly, we cannot say the trial court erred in not crediting husband for any such efforts and contributions. Indeed, taken as a whole, the evidence presented at the equitable distribution hearing provides ample support for the trial court's decision to award wife 55% of the value of *The Observer*, and we hold the trial court did not abuse its discretion in making such an award.

Husband also contends the trial court erred in failing to credit him for his separate personal goodwill when it divided the value of *The Observer*. Rule 5A:18, however, provides in pertinent part that

> [n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated *together with the grounds therefor* at the time of the ruling . . . . A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

(Emphasis added.)

Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

the expert explained, the larger the circulation, the more the newspaper can charge for advertising.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc), aff'd, No. 040019 (Va. Sup. Ct. Order of 10/15/04). Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980). In short, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal"). The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 739 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991).

In this case, husband argued in his closing brief solely as follows:

> Assuming, *arguendo*, that the Court does not adopt either expert's opinion but determines that *The Observer* has some intrinsic value, then [husband] respectfully requests that the Court award him sixty-five percent (65%) of that value and award [wife] thirty-five percent (35%) of the value. The basis of this request is the extraordinary contributions, both monetary and non-monetary, that [husband] has contributed compared to the same contributions of [wife].

Upon receipt of the trial court's decision regarding *The Observer*, husband asked the court to reconsider its decision, arguing solely as follows:

> There were no facts presented in this case that would be a basis for the Court to deviate from the majority rule that the working spouse receive an unequal division of a closely held business. Based on this authority, it seems clear that [husband], as the working spouse and the owner of the shares in *The Observer*, should receive the majority of the value of *The Observer*. Accordingly, it is respectfully

- 13 -

requested that the Court modify its Opinion and give [husband] 65% of the value of *The Observer*.

In noting his objection to the final decree, husband stated, in pertinent part, that "[t]he Court erred in awarding [wife] 55% of the value of *The Observer*." He made no other arguments regarding *The Observer*.

Thus, despite having had the opportunity to do so, husband did not alert the trial court to his claim that the court erred in failing to account for his personal goodwill in dividing the value of *The Observer*. Thus, the trial court was not timely advised of the alleged error and had no opportunity to consider, address, or correct it. Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Edwards, 41 Va. App. at 761, 589 S.E.2d at 448 ("We will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did not do so). We hold, therefore, that husband is barred by Rule 5A:18 from raising this claim for the first time on appeal.

### III. ATTORNEY'S FEES AND COSTS

Wife petitions this Court for an award of her attorney's fees and costs incurred in responding to husband's appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Upon our review of the instant record, we find that, although ultimately unpersuasive, husband's position on appeal "was not so unreasonable as to entitle wife to an award of attorney's fees incurred in this appeal."

<u>Boedeker v. Larson</u>, 44 Va. App. 508, 526, 605 S.E.2d 764, 772 (2004).  Accordingly, we deny

wife's request for an award of the attorney's fees and costs she incurred defending this appeal.

IV.  CONCLUSION

For these reasons, we affirm the trial court's judgment and deny wife's request for

appellate attorney's fees and costs.

<u>Affirmed.</u>