COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Clements
Argued at Salem, Virginia


NEIL A. VACCHIANO

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2476-03-3          JUDGE JEAN HARRISON CLEMENTS
                                                 AUGUST 17, 2004
KAREN M. SPEIER, F/K/A
  KAREN M. VACCHIANO


               FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                         James W. Updike, Jr., Judge

               J. Emmette Pilgreen, IV (Harvey S. Lutins; Lutins & Pilgreen, P.C.,
               on briefs), for appellant.

               Harwell M. Darby, Jr. (Glenn, Feldmann, Darby & Goodlatte, on
               brief), for appellee.


        This appeal arises from a final decree of divorce entered by the Circuit Court of Bedford

County (trial court) on August 27, 2003.  On appeal, Neil A. Vacchiano (husband) challenges the

trial court's equitable distribution rulings as to a marital asset of the parties known as Majestic Oaks,

LLC (LLC).  He contends the trial court erred in (1) valuing the LLC, a real estate holding and

development company, as of the date of the separation rather than the date of the evidentiary

hearing and (2) failing, in valuing the LLC, to consider evidence regarding the potential tax liability

and other charges associated with the future sales of lots owned by the LLC.  On cross-appeal,

Karen M. Speier (wife) challenges the trial court's rulings regarding her requests for spousal

support.  She contends the trial court erred in (1) failing to award her temporary spousal support, (2)

limiting the duration of her permanent spousal support award, and (3) failing to grant her a

        _____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reservation of right to seek future spousal support. Wife also seeks an award of her appellate attorney's fees and costs.

Finding no error therein, we affirm the trial court's rulings regarding equitable distribution, wife's request for temporary spousal support, and the duration of wife's permanent spousal support. Finding the trial court abused its discretion in failing to grant wife a reservation of right to seek future spousal support, we reverse that judgment and remand for further proceedings. Because both parties presented arguments with legal merit, we deny wife's request for an award of appellate attorney's fees and costs.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. EQUITABLE DISTRIBUTION

On appeal, "[w]e review the evidence in the light most favorable to . . . the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003). "Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). "Furthermore, unless it appears from the record that the trial judge has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the equitable distribution

award will not be reversed on appeal." Blank v. Blank, 10 Va. App. 1, 9, 389 S.E.2d 723, 727 (1990).

## A. Valuation of the LLC

On appeal, husband concedes the LLC was marital property. He argues, however, that, in determining, for equitable distribution purposes, the value of the LLC, the trial court improperly used the gross, rather than net, sales price for the lots sold by the LLC after the parties' separation and disregarded various marital living expenses paid by the LLC after the separation. He also argues the trial court improperly disregarded the commission and settlement charges the LLC will incur when its remaining lots are sold. Thus, he contends the trial court abused its discretion by effectively valuing the LLC as of the date of separation, rather than the date of the adjudicatory hearing, and by failing to consider the LLC's future commission and settlement charges. We disagree.

Code § 20-107.3(A) provides that the trial court

> shall determine the value of [marital and hybrid] property as of the date of the evidentiary hearing on the evaluation issue. Upon motion of either party made no less than twenty-one days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used.

The parties agree that no motion for an alternate valuation date was made in this case. Thus, the trial court was required to determine the value of the LLC as of the date of the evidentiary hearing, which was held on July 23, 2003.

Viewed in the light most favorable to wife, the evidence established that, in 1994, during the marriage, the parties purchased thirty acres of land in Bedford County, which they subsequently subdivided and developed. By a deed dated March 29, 2000, the parties transferred title of the subdivision to the LLC. Husband, a real estate agent, was the sole title owner of the LLC. The parties separated on March 26, 2002. Not including the former marital home, which was valued

- 3 -

separately at the hearing, and a lot sold prior to the parties' separation, the LLC consisted of twenty-seven lots. Eight lots of the LLC were sold after the separation and prior to the evidentiary hearing.

At the evidentiary hearing, wife introduced into evidence an assets worksheet dated June 20, 2003, that listed the parties' marital properties and the value of those properties. Husband also introduced into evidence an identical copy of the same assets worksheet. The worksheet listed the value of the LLC at $802,500 and referenced Exhibit A attached to the worksheet to show how that value was derived. Exhibit A listed the relevant twenty-seven lots held by the LLC and the value of each lot. Exhibit A also identified the source used to determine the value of each lot. Wife introduced into evidence the various source documents from which she derived the value of each of the twenty-seven lots. The values of fifteen of the lots were based on a July 15, 2003 appraisal commissioned by husband of certain lots of the LLC. That appraisal assigned values to the fifteen individual lots and showed that, as of July 2, 2003, the value of those lots totaled $461,000. The values of eight of the lots were based on the settlement statements or purchase contracts for those lots. Other than wife's attempt to show that husband made a profit on a "spec" house built on one of the lots, neither party offered any evidence regarding the significance of the information contained in the settlement statements or purchase contracts. The listed values of those lots totaled $256,500. The values of the remaining four lots were based on 2003 Bedford County tax assessments. Tommy R. DeWitt, the broker at Tom DeWitt Real Estate and husband's employer, testified that tax assessments of lots in new developments, like the LLC, are "very, very accurate" indicators of the market value of those types of property. The assigned values of those lots totaled $85,000. Wife testified at the hearing that her assets worksheet was "a fair characterization of the identity of the assets and the values of the assets as they exist[ed]" at the time of the hearing.

Husband offered no evidence or argument to refute wife's valuations of the individual lots of the LLC.  Nor did he offer any specific evidence or argument regarding the value of the LLC at the time of the hearing.  Rather, he simply stated that wife's overall valuation of the LLC was "very inflated" and that, in arriving at her valuation, wife did not "consider all of the interest payments that [he] made and all of the mortgages that [he] paid off."  In support of that statement, he testified he borrowed "[a]bout" $175,000 from BB&T Bank "on the development" and, using the proceeds from the sale of the first four lots, paid that loan off by July 1, 2002.  Husband also introduced into evidence a printout that he described as "a history of all the loans that [he] incurred with BB&T and all of [his] interest payments and all of the principal payments that [he] made as well."[1]  The printout shows, *inter alia*, that the LLC loan account had a principal balance of $51,404 on July 27, 2000, a principal balance of $100,000 on March 26, 2002, and a zero principal balance on July 3, 2002.  Husband, however, offered no further testimony or argument explaining the contents of the printout or how the trial court should interpret or apply it.  In his closing argument, husband simply stated as follows regarding how the LLC should be valued:

> As far as the valuation goes, we paid for an appraisal to come into play.  The appraisal found the value of the lots, and we don't see any reason to dispute that. . . .

> *        *        *        *        *        *        *

> And so we would submit that the proper valuation is the lots that are not sold, and then we need to classify the other assets.

Regarding payments he purportedly made for marital living expenses using the LLC's funds, husband testified as follows:

---

[1] During this same period of time, husband was also engaged in building "spec" homes on some of the lots of the LLC through NV Custom Living, Inc., another closely held business he owned.

- 5 -

> This past year out of the Majestic Oaks, LLC, account, I paid for my daughter's college. I paid for all of her doctors bills. I paid for her insurance for her car, her tires, the maintenance of her car.
>
> For my son, I've paid for the lion share of all his bills, and also for their counseling.

Husband, however, offered no evidence of the amounts of these claimed expenses.

Similarly, husband offered no evidence regarding commission and settlement charges the LLC would incur in connection with the future sales of its remaining lots.[2]

The trial court valued the LLC at $802,500. Upon consideration of husband's motion to reconsider, the trial court judge rejected husband's claim that the value of the eight lots sold after the separation and before the hearing should not have been included in the value of the LLC, stating as follows:

> [V]aluation is at the date of the evidentiary hearing unless a motion is timely filed . . . for another date in accordance with the statute. Well, as far as the Majestic Oaks is concerned, . . . a number of the lots . . . have been sold, and sold after the last separation of the parties. So, as to that particular asset of the Majestic Oaks, as a marital asset, I'm not valuing the lot, because the limited liability company no longer has the lot.
>
> The lot was sold, but rather, there is a financial asset which is of the nature of a cash asset, and cash has its intrinsic value. . . . [S]etting aside any considerations as to passive appreciation or inflation and those kinds of things . . . , let's say Lot 7 . . . sold May of 2002 for $25,000, Mr. Vacchiano got that asset. That is $25,000. Now, perhaps the arguments could be made from the wife's standpoint that he's had the use of that $25,000 since that time, and

---

[2] On appeal, husband points to the testimony of his employer, DeWitt, as supporting his claim that the trial court erred in disregarding the LLC's future commission and settlement charges when valuing the LLC. With regard to commissions, however, DeWitt testified solely that the commissions husband earned from his work were "basically a 70/30 split," with "70 percent go[ing] to [husband and] 30 percent stay[ing] within the office," and that every commission consisted of a "listing part" and a "selling part." DeWitt did not explain the relevance of the two "parts" or how they were calculated. DeWitt also stated that the lots of the LLC were "multiple listed," which means that "every realtor in the Lynchburg area has access to sell that property." DeWitt further testified that, although husband had been responsible for selling most of the LLC's lots, some of the lots had "been sold by realtors other than [husband]." While such testimony may have been relevant to other issues that were before the trial court, we discern no relevance in such testimony to husband's instant claim on appeal. Additionally, DeWitt gave no testimony regarding settlement charges.

that there should be some consideration given as to interest and that sort of thing, and though I've not done that in my ruling with mathematical certainty, I try to consider these factors. So, I stand behind the process that I've followed as to classification, valuation, and distribution, and I, in accordance with the evidence and to the best of my ability as to the lots still owned by the LLC, I placed a present value, value as of the date of the evidentiary hearing the best that I could *with what I had* . . . .

(Emphasis added.) The trial court judge also noted that most of the argument at the evidentiary hearing focused on the distribution, rather than the valuation, of the LLC.

Upon these facts and circumstances, we cannot say the trial court abused its discretion in valuing the LLC at $802,500. It is clear from the record that the trial court judge understood he was valuing the LLC and not merely the lots it owned and that he was doing so as of the date of the evidentiary hearing. Both parties presented the same asset worksheet placing the value of the LLC as of the date of the evidentiary hearing at $802,500. Wife testified that the figure was a "fair characterization" of the value of the LLC. Wife also presented Exhibit A to show how she had arrived at that figure. Exhibit A assigned a value to each of the lots still held by the LLC at the time of the hearing and listed the sales price received by the LLC for those properties that were sold between the date of the parties' separation and the date of the evidentiary hearing. Husband did not challenge those values or the amounts received by the LLC for the sold lots or offer any evidence of the actual value of the LLC. Indeed, although he offered some evidence of post-separation expenditures by the LLC, he did not provide sufficient evidence to show or explain what specific effect, if any, those expenditures had on the value of the LLC provided by wife. Likewise, he did not present sufficient evidence to allow the court to determine the LLC's future commission and settlement charges by which the established value of the LLC could be reduced. The trial court, therefore, was effectively left with no choice but to conclude that the value of the LLC was $802,500. Indeed, as the trial judge stated, the court did the best it could with the evidence it had before it.

As we stated in Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987), where the trial court has been asked to determine the value of marital property for purposes of equitable distribution, "the litigants have the burden to present evidence sufficient for the court to discharge its duty." In other words, "[t]he burden is always on the parties to present sufficient evidence to provide the basis on which a proper [valuation] can be made." Hodges v. Hodges, 2 Va. App. 508, 517, 347 S.E.2d 134, 139 (1986). "This determination must go beyond mere guesswork." Id. at 516, 347 S.E.2d at 139. "When the party with the burden of proof on an issue fails for lack of proof, he cannot prevail on that question." Bowers, 4 Va. App. at 617, 359 S.E.2d at 550. Thus, we will not reverse the trial court's valuation determination "'where the parties have had an adequate opportunity to introduce evidence but have failed to do so.'" Id. (quoting In re Marriage of Smith, 448 N.E.2d 545, 550 (Ill. 1983)).

Here, wife having presented sufficient evidence to permit the trial court to determine the value of the LLC, it was husband's burden to present sufficient evidence to persuade the court to find otherwise. Although husband testified he procured a loan "on the development" from BB&T Bank and presented a printout exhibit purporting to show principal and interest payments made by the LLC to BB&T Bank, he presented no evidence to explain the practical relevance of the exhibit or how the payments listed therein should be used by the trial court to determine the value of the LLC at the time of the hearing. Likewise, husband presented no evidence to explain the usefulness, if any, of the information in the settlement statements or sales contracts in determining the "net" values of the lots sold by the LLC after the parties' separation or in ascertaining the future commission and settlement charges the LLC would incur. Moreover, although husband claimed to have used the LLC's funds to pay various marital living expenses after the separation, he presented no evidence of any sums paid. Similarly, he presented no evidence regarding the LLC's future commission and settlement charges.

Having failed to present the trial court with sufficient evidence to find other than it did in determining the value of the LLC, husband will not now be heard to claim the trial court erred. We conclude the trial court's valuation of the LLC was supported by credible evidence and was not plainly wrong. Hence, we affirm the court's decision.

## B. Tax Consequences

Husband also contends the trial court abused its discretion by failing to consider, in fashioning the equitable distribution award, the unimpeached and uncontradicted testimony of his accountant regarding the tax liability husband will incur when the remaining lots owned by the LLC are sold. We disagree with husband's implicit premise that the trial court did not consider the tax consequences to husband when it fashioned the equitable distribution award.

Code § 20-107.3(E) requires a trial court to consider the tax consequences to each party in fashioning an equitable distribution award. See Shooltz v. Shooltz, 27 Va. App. 264, 278, 498 S.E.2d 437, 444 (1998).

Here, William Capezio, husband's accountant, testified that the net gain (i.e., sales price less cost basis) from the sale of the LLC's lots would be taxed to husband, a realtor and real estate developer, as ordinary personal income. Capezio stated there was a remaining cost basis of $140,896 on the LLC development project. Thus, Capezio explained, if the remaining lots were sold for a total of $461,000, husband would be responsible for paying ordinary personal income tax on the net gain of $320,104. Husband's actual tax liability, Capezio further explained, would be contingent upon the tax rate in effect at the time of each sale. Capezio surmised that, based on the tax rates in effect at the time of the hearing, the applicable rates would be "approximately 15 to 25 percent."

In distributing the marital estate on an equal basis, and in awarding wife a lump sum award of $444,403.60, the trial court explicitly stated it had given consideration to all the evidence

presented and all of the factors listed in Code § 20-107.3(E). Thereafter, the trial court addressed only the factors it "found to be most applicable": Husband was fifty-five years old, and wife was fifty-three years old. They had been married nearly nineteen years. At the time the parties were married, wife's income was substantially larger than husband's. After the birth of their first child, wife left her lucrative job to become the primary care provider for the children. In recent years, husband's salary had increased significantly. Husband had received large monetary gifts from his family, and wife had received an inheritance of approximately $90,000. Both parties had made significant monetary and nonmonetary contributions to the well-being of the family and to the acquisition of the marital property.

It is well established that, while the trial court must consider all of the factors set forth in Code § 20-107.3(E) in granting a monetary award, the trial court "need not quantify or elaborate exactly what weight was given to each of the factors." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). Thus, although the trial court did not quantify or elaborate exactly what weight it gave to husband's evidence regarding the tax consequences the future sales of the LLC's lots would have on him or list such consequences among the specific factors it found most applicable, we find the trial court considered all of the evidence presented, including Capezio's testimony, and considered all of the factors found in Code § 20-107.3(E), including the tax consequences to each party. Because the trial court's equitable distribution award is not plainly wrong or without evidence to support it, we affirm the trial court's decision.

## II. SPOUSAL SUPPORT

### A. Temporary Support

In her cross-appeal, wife contends the trial court abused its discretion by failing to award her temporary spousal support for the period March 28, 2003, through July 23, 2003. Wife claims her

evidence demonstrated a need for temporary spousal support of $2,013.95 from March 2003 through June 2003 and $3,151.05 for July 2003.[3] We disagree.

Under Code § 20-103(A)(i), the trial court had discretion to award temporary spousal support during the pendency of this suit. Since the separation of the parties on March 26, 2002, wife had received twelve payments of $1,500 each from husband. The trial court found that the first six payments were made pursuant to an order of support from the Juvenile and Domestic Relations District Court of Bedford County. Husband argued that the remaining six payments were made pursuant to an oral agreement between the parties. Wife, while acknowledging the receipt of the latter six payments, argued the oral agreement was unenforceable as a result of the Supreme Court's decision in Flanary v. Milton, 263 Va. 20, 556 S.E.2d 767 (2002). The trial court agreed with wife, but ruled as follows:

> [H]owever, upon consideration of the evidence presented, including the evidence of wife's need for spousal support and husband's ability to pay spousal support, I find that the twelve payments of $1,500.00 per payment constitute fair and just temporary spousal support. Wife's request for an additional award of temporary spousal support is denied.

Wife had received an inheritance during the marriage of $90,000, of which $23,000 remained at the time of the parties' separation. During the separation, wife received $15,000 from the sale of jointly owned property. Wife has earned masters degrees in Marketing and Computer Science. She is a licensed, credentialed computer teacher. Wife had been working as a full time substitute teacher during the school year of September 2002 through June 2003, earning a gross salary of $1,500 per month. Wife had voluntarily returned to college, taking courses in special education, and expected to be licensed in that field by the spring of 2004. She testified that she expected to be able to earn $33,000 to $35,000 in that field.

---

[3] The trial court awarded wife permanent spousal support in the amount of $750 per month for the defined duration of August 1, 2003, through July 31, 2004.

The trial court determined that the $18,000 wife had received from husband for the period of separation on March 26, 2002, until the permanent award on August 1, 2003, was "fair and just temporary spousal support." We cannot say the trial court's exercise of discretion was plainly wrong or without evidence to support it. Thus, we find no error in its ruling.

### B. Duration of Permanent Spousal Support Award

Wife maintains the trial court has properly fashioned an equitable distribution award in such a manner as to provide adequately for the needs of the wife. However, wife adds, in the event this Court finds the trial court abused its discretion and remands to the trial court to reconsider the equitable distribution award, the trial court must also reconsider, on remand, the effect of its equitable distribution award upon the permanent spousal support award. In that event, wife contends, the trial court abused its discretion in limiting the duration of the permanent spousal support award to $750 for the period August 1, 2003, through July 31, 2004. Because we find no error in the trial court's equitable distribution award, we need not address this claim further.

### C. Reservation of Right to Seek Future Spousal Support

Wife contends the trial court abused its discretion in failing to grant her a reservation of right to seek future spousal support. We agree.

In its final decree of divorce, the trial court ruled, "The wife's request for a reservation of the right to future support is denied." The trial court awarded the wife a divorce on the ground of separation for more than one year. It made no findings that would bar wife's entitlement to her requested reservation and failed to explain the basis for its denial of her request. Husband makes no argument on appeal that the trial court's denial was proper.

"[W]here there is no bar to the right of spousal support[,] 'it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive

- 12 -

spousal support in the event of a change of circumstances,' even though, at the time of the decree, neither party needed support." <u>Blank</u>, 10 Va. App. at 4, 389 S.E.2d at 724 (quoting <u>Bacon v. Bacon</u>, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986)).  Thus, wife having made a request for a reservation of right to seek future spousal support, and there being no bar to her right to receive spousal support, the trial court abused its discretion in denying her request.

Accordingly, we affirm the trial court's rulings as to equitable distribution, temporary spousal support, and the duration of permanent spousal support.  We reverse the trial court's denial of wife's request for a reservation of right to seek future spousal support and remand for further consideration of this request.

<u>Affirmed in part,</u>
<u> reversed in part,</u>
<u>and remanded</u>.